758 F.2d 103
 12 Collier Bankr.Cas.2d 777, 12 Bankr.Ct.Dec. 1308,
Bankr. L. Rep. P 70,336
 In re SIMONSON, William M. i/t/a Simonson's Sporting Goods
and Simonson, Maureen P., his wife, Debtors.
SIMONSON, William M. and Simonson, Maureen, P., Appellants,
v.
FIRST BANK OF GREATER PITTSTON.
 No. 84-5218.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 26, 1984.
Decided March 25, 1985.
 
 Robert C. Nowalis (argued), Doran & Nowalis, Wilkes-Barre, Pa., for appellants.
 Paul E. Beck, Jr., Asst. District Counsel (argued), Steven N. White, Acting District Counsel, Small Business Administration, Bala Cynwyd, Pa., David Dart Queen, U.S. Atty., Albert R. Murray, Asst. U.S. Atty., Scranton, Pa., for appellee.
 Before GIBBONS and BECKER, Circuit Judges, and KATZ, District Judge.*
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 William M. and Maureen P. Simonson, debtors, appeal from an order of the district court, affirming a bankruptcy judge's decision denying them relief from the lien of certain judgments pursuant to 11 U.S.C. Sec. 522(f) (1982). 44 B.R. 269. The Simonsons are debtors under Chapter 7 of the Bankruptcy Code, who in adversary proceedings against First Bank of Greater Pittston, sought to have its judgment liens against their residence in Luzerne County, Pennsylvania set aside because the liens impaired their exemption under section 522(b) of the Code. 11 U.S.C. Sec. 522(b) (1982). The bankruptcy court denied that relief and the district court affirmed. We, too, affirm.
 
 
 2
 When the Simonsons filed their Chapter 7 petition their residence was encumbered as follows:
 
 
 3
 Because 11 U.S.C. Sec. 522(d)(1) provides that each debtor may exempt "[t]he ... aggregate interest not to exceed $7,500 in value, in real ... property that the debtor ... uses as a residence," the Simonsons sought to exempt their residence to the extent of $15,000. The parties stipulated that the fair market value of the house was less than $80,872.12. They also agreed that it should be sold for $58,250.00 and the proceeds distributed to the interested parties.
 
 
 4
 The Simonsons contend that $25,145.95 should go to the first mortgagee, and the next $14,411.33 to them, leaving the balance of the $58,250.00, less interest, for the second mortgagee. Their theory is that under 11 U.S.C. Sec. 522(f)(1) judicial liens may be set aside to the extent that they impair exemptions, and that under 11 U.S.C. Sec. 522(i)(2) "a transfer avoided under ... subsection (f) ... of this section ... may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection." Read together, according to the Simonsons, section 522(f)(1) and section 522(i)(2) produce the result that they may "avoid the fixing" of the two judgment liens, totalling $14,411.33, on their residence, but "preserve" those liens so that their $15,000 exemption becomes, to the extent of $14,411.33, a lien superior to the second mortgage.
 
 
 5
 The bankruptcy judge rejected this contention, reasoning that while the two judgment liens could be avoided under section 522(f), the priority position of those liens could not be preserved so as to give the Simonsons' exemptions priority over the second mortgage. We also reject the Simonsons' contention, but approach the problem somewhat differently.
 
 
 6
 Section 522(f)(1) permits avoidance of judicial liens, which are by nature non-consensual. Section 522(f)(2) permits avoidance of nonpossessory, nonpurchase-money security interests on designated personal property. In either case the debtor may avoid "the fixing of a lien on an interest of the debtor in property...." The section does not define "interest of the debtor in property." We think, however, that "an interest of the debtor in property" was intended to mean an interest of the debtor measured by taking into account those interests of other parties which may not be avoided under section 522(f).
 
 
 7
 In this case two interests, a first and a second mortgage, totalled $66,460.79. The sale of the property produced $58,250.00. Thus the debtor had no interest in the property to which an exemption could attach. Had the property produced at sale proceeds in excess of the consensual liens, which are not subject to avoidance under section 522(f)(1) or (2), the debtor would have had an exemptible interest in the excess, behind the liens of the first and second mortgages, and would have been entitled to avoid the judgment liens so as to preserve that interest for application of the exemption. We have found no indication in the legislative history of section 522 suggesting that Congress intended it to be a means of creating equity, which did not otherwise exist, in property for the benefit of a debtor. Absent such equity, the problem of lien avoidance under section 522(f) simply does not arise.
 
 
 8
 The Simonsons urge that section 522(i)(2) requires a different result. That opaque subsection reads:
 
 
 9
 Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (l) of this subsection.
 
 
 10
 11 U.S.C. Sec. 522(i)(2) (emphasis supplied). The cross reference to section 551, is to that section which preserves, for the benefit of the estate, property recovered by a trustee as voidable transfers. Thus the basic purpose of section 522(i)(2) is to make such property available to the debtor as well as the estate, but only as expressly provided; that is, "to the extent that the debtor may exempt such property under subsection (g) [of section 522] or paragraph 1 of [section 522(i) ]."
 
 
 11
 Subsection 522(g) permits exemption of property recovered by the trustee under principles of equitable subordination (section 510(c)), pursuant to turnover orders (sections 542, 543), as voidable transfers (sections 550, 551), or as voidable setoffs (section 553). The exemption is permitted, however, only "to the extent that the debtor could have exempted such property ... if such property had not been transferred". 11 U.S.C. Sec. 522(g). Thus section 522(g) adds nothing to the debtors' substantive position vis-a-vis holders of non-avoidable liens. If the property is brought into the estate by virtue of the trustee's avoidance powers, it is available for exemption, but only to the same extent as if there had been no transfer. If there had been no transfer, the debtor's exemption would apply to equity in property after taking into account valid encumbrances not set aside.
 
 
 12
 Paragraph (1) of subsection 522(i) is no more helpful to the Simonsons. It provides that if a debtor avoids a transfer under subsection (f) of section 522, he may resort to section 550 to recover possession of the property from transferees, "the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) ..." As with subsection 522(g), this provision merely permits the debtor to apply the exemption to recovered property. It does not enlarge his substantive authority to set aside otherwise non-avoidable liens.
 
 
 13
 In this case, taking into account unquestionably valid first and second mortgages not subject to avoidance under section 522(f) or otherwise, the Simonsons had no equity in their residence. Thus there was no interest of the debtors which could be impaired by the two judgment liens held by the First Bank of Greater Pittston. Those liens should simply have been left in place. In this instance, because the Small Business Administration is an assignee from First Bank of Greater Pittston of the subsequent second mortgage, and the bank has not appealed, the bankruptcy court's ruling that those liens could be avoided has had no practical consequence here. The court's ultimate decision that the Small Business Administration should receive the proceeds from sale of the residence after payment of the first mortgage was correct.
 
 
 14
 The judgment appealed from will, therefore, be affirmed.
 
 
 15
 BECKER, Circuit Judge, dissenting.
 
 
 16
 This is a close and difficult case, primarily because of opaqueness of the pertinent portions of the Bankruptcy Code ("Code"). I concede that the majority opinion rests on a plausible reading of section 522(f) of the Code, 11 U.S.C. Sec. 522(f), and that its position finds some support in the case law. See infra part III. The majority's interpretation is not the only one consistent with the words of the statute, however, and for this reason we must look to the congressional policy underlying the provision in order to discern its proper scope. Fortunately, the policy is clearer than the statutory language. The intent of Congress in enacting section 522(f) was to provide debtors in a Chapter 7 proceeding with a "fresh start," including some equity in a residence, upon the conclusion of the bankruptcy proceedings. See 11 U.S.C. Sec. 522(f); H.R.Rep. No. 595, 95th Cong., 1st Sess., 362 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6317. See also 11 U.S.C. Sec. 522(d) (listing exemptions). On balance, I believe that an interpretation of section 522(f) informed by this policy better effectuates congressional intent than does the majority's approach.
 
 
 17
 The critical question in this case is whether the judicial liens held by the Bank of Greater Pittston "impair an exemption to which the debtor would have been entitled" under Sec. 522(b) of the Code, 11 U.S.C. Sec. 522(b). As I understand its opinion, the majority holds that the judicial liens do not impair the Simonsons' homestead exemption because the total amount due on two concededly valid and unavoidable mortgages--a first mortgage ($25,145.95) which is superior to the judicial liens, and a second mortgage ($41,314.84) which is junior to the judicial liens--exceeds the stipulated value of the property. The majority appears to hold that a judicial lien "impairs an exemption," and is therefore avoidable, only when avoiding the lien would leave some "equity" in the property after satisfaction of all unavoidable encumbrances, regardless of their priority position.[1]
 
 
 18
 In my view, under the structure of the bankruptcy code, the relative priority positions of the four encumbrances are critical. I believe that a judicial lien "impairs" an exemption with respect to overencumbered property to the extent that the judicial lien, according to its amount and priority position, attaches to a portion of the value of the property. For example, in this case judicial liens of $14,411.33 are junior only to a valid mortgage of $25,145.95 on a property worth $58,250. Because $39,567.28 ($14,411.33 + $25,145.95) is less than $58,250, the full amount of the judicial liens attaches to value in the property, impairs the exemption, and is therefore avoidable under section 522(f). On the other hand, if both valid mortgages were senior to the judicial liens, as will commonly be the case, I would agree that the judicial liens would not impair the exemption. If the two mortgages were senior, only the first mortgage ($25,145.95) and a portion of the second mortgage ($58,250 - $25,145.95 = $33,104.05) would attach to the value of the property; hence, the judicial liens would not be avoidable under section 522(f).
 
 
 19
 I would hold that the district court was correct in avoiding the judicial liens. The district court's ultimate disposition of the case was not correct, however, for the proper course in my view is to preserve avoided judicial liens for the benefit of the debtor's exemption. See 11 U.S.C. Sec. 522(c); infra part IV. I turn to an amplification of these views.
 
 I.
 
 20
 An understanding of the role of section 522(f) in the context of a Chapter 7 proceeding must begin with a brief discussion of the concept of the bankrupt's estate. The estate is created upon the filing of the bankruptcy petition. 11 U.S.C. Sec. 541(a). This estate consists of, inter alia, "(1) all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. Sec. 541(a)(1).[2] The estate does not include the liens of secured creditors, however. 11 U.S.C. Sec. 541(d). Thus where a property is encumbered by security interests, only the unencumbered portion of the value of the property--the debtor's "equity" in the property--passes to the estate, along with the debtor's legal title to the property. In the case at hand, then, none of the value of the Simonsons' property, but only legal title thereto, passed to the estate when the Simonsons filed their bankruptcy petition.
 
 
 21
 The link between the scope of the "estate" and the availability of exemptions is found in section 522(b), which provides that the debtor takes his exemptions (enumerated in section 522(d)) out of the property of the estate. See 11 U.S.C. Sec. 522(b). Because prepetition security interests do not pass to the bankruptcy estate, see 11 U.S.C. Sec. 541(d), the estate may contain insufficient value in encumbered property to satisfy the debtor's exemptions.[3] As to overencumbered property, the estate at the commencement of the case will contain no value; hence, the debtor ordinarily will not be able to acquire any portion of the property for the benefit of his exemption.
 
 
 22
 In enacting section 522(f), however, Congress carved out an exception to the general rule stated above. In pertinent part, the statute provides that:
 
 
 23
 Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section [11 U.S.C. Sec. 522(b) ], if such lien is--
 
 
 24
 (1) a judicial lien;
 
 
 25
 11 U.S.C. Sec. 522(f). Section 522(f) provides an exception to the general rule that unsecured creditors must bear the burden of debtor exemptions. The language of the statute gives to debtors the ability to avoid certain judicial liens and thereby create equity in exempt property, equity the debtor can then apply to benefit his exemptions. See, e.g., In re Brown, 734 F.2d 119, 125 (2d Cir.1984). The important threshold question in this case concerns the scope of this avoiding power.
 
 II.
 
 26
 The majority answers in the negative the question whether the judicial liens held by the First Bank of Greater Pittston are "liens on an interest of the debtor in property" that "impair an exemption to which the Simonsons would have been entitled" under section 522(b). See 11 U.S.C. Sec. 522(f). Because the total of unavoidable mortgages exceeds the stipulated value of the property, reasons the majority, "the debtor had no interest in the property to which an exemption could attach." Majority opinion, typescript at 5. To the extent that the majority, in making this statement, equates a debtor's "interest in property" with the debtor's "equity," in the property, i.e., the excess of value over unavoidable liens, I must disagree. In my opinion, the better view is that an "interest of the debtor in property" for purposes of section 522(f) encompasses more than equity in the property. Numerous courts have held that a debtor has an "interest" in a residence that is overencumbered. See, e.g., In re Brown, 734 F.2d at 123 ("the overwhelming weight of authority holds that even if liens on the property exceed the market value of the property, leaving the debtor with no equity in it, the debtor nonetheless has an 'equitable interest' in the property") (citing cases); Alu v. New York Department of Tax and Finance, 41 B.R. 955, 957 (E.D.N.Y.1984). The legislative history to section 541, which described "interest in property" very broadly, supports this view. See supra note 2.
 
 
 27
 The more difficult question is whether, admitting that the liens are sought to be fixed on an interest of the debtor in property, those liens impair the Simonsons' exemption. The majority answers this question in the negative as well. See majority opinion, typescript at 7-8 ("the Simonsons had no equity in their residence. Thus, there was no interest of the debtors which could be impaired by the two judgment liens...."). If the judicial liens in this case had not been avoided, as the majority suggests they should not have been, see id., typescript at 8, the judicial lienholders, because they were senior to the $41,315.84 second mortgage, would have been able to satisfy their claims out of the proceeds from the sale of the property. Under the majority view, then, the debtor's subsequent encumbering of the property with the junior mortgage serves to insulate the judicial liens from the effect of section 522(f), because the total of the two (consensual) unavoidable encumbrances exceeds the value of the property.
 
 
 28
 This approach is consistent with the reasoning adopted by the bankruptcy courts in In re Durham, 33 B.R. 23 (Bankr.D.Tenn.1983), and In re Fiore, 27 B.R. 48 (Bankr.D.Conn.1983). See also In re Boteler, 5 B.R. 408 (Bankr.S.D.Ala.1980). Like the case at hand, those cases involved judicial liens that occupied priority positions senior to those of concededly unavoidable mortgages. In each case, the debtor sought to avoid the judicial liens and then to "stand in the shoes" of the judicial lienor, thus preserving the priority position of the displaced lien for the benefit of the debtor's homestead exemption.
 
 
 29
 Both courts rejected this argument. The Fiore court reasoned:
 
 
 30
 At the time Cooper [the judicial lienor] liened the debtor's property he was not impairing any potential exemption. To allow the debtor to place a voluntary lien on his property, and thereby to eliminate Cooper's judicial lien through the use of Sec. 522(f) is an unjust result and should not be imputed to be Congress' purpose and objective in enacting Sec. 522(f).... I therefore conclude that Cooper's judicial lien is not avoidable as impairing an exemption to which the debtor is entitled.
 
 
 31
 Fiore, 27 B.R. at 50.[4] The principal concern of the court in Fiore was the perceived unfairness of allowing the debtor to overencumber his property with consensual liens and still retain an exemption therein, to the detriment of the judicial lienor. This theme was echoed in the later Durham case, where the court noted: "it is inequitable to permit the debtors to take advantage of the fact that they themselves have impaired a homestead exemption through the consensual execution of [an unavoidable security interest]." Durham, 33 B.R. at 26. Presumably, similar concerns motivate the conclusion of the majority that the "interest of the debtor in property," which is the exclusive source of any exemptable interest in the property, "was intended [by Congress] to mean an interest of the debtor measured by taking into account those interests of [all] other parties [including mortgagees junior to the judicial lienors] which may not be avoided under section 522(f)." Majority opinion, typescript at 5. See also In re Washington, 41 B.R. 211, 217 (Bankr.E.D.Va.1984) ("It is clear that an equity must exist over unavoidable liens before the debtors can seek application of the avoiding provisions of Sec. 522(f)"); In re Miller, 8 B.R. 43, 46-47 (Bankr.W.D.Mo.1980) ("interest" in property confined to equity in property).
 
 
 32
 I concede that these policy arguments are forceful. But in light of the overriding purpose of section 522(f) to protect the debtor's exemption against the threats posed by carefully specified types of security interests, see 11 U.S.C. Sec. 522(f), I would not read into the provision a limitation not fairly discernible from the plain language of the statute or its legislative history. The majority supplies no evidence of a congressional intent to restrict the scope of the section, and my reading of the legislative history suggests that Congress did not intend to prohibit the application of section 522(f) in a situation such as the present one. On the contrary, the legislative history states that "[t]he debtor may avoid any judicial lien on exempt property...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977) reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6087 (emphasis added). An important goal of the exemptions is to "provide relief for the overburdened debtor." Id. This policy is no less compelling merely because, as Congress well knew would often be the case, a straitened debtor has overencumbered his property.
 
 III.
 
 33
 In contrast to the majority's approach, some bankruptcy courts have adopted a more expansive approach to section 522(f). See, e.g., In re Ricks, 40 B.R. 507 (Bankr.D.D.C.1984); In re Chesanow, 25 B.R. 228 (Bankr.D.Conn.1982); In re Robert J. Losieniecki v. Thrift Consumer Discount Company, 17 B.R. 136 (Bankr.W.D.Pa.1981); see also Matter of Schmidt, 36 B.R. 144 (Bankr.N.D.Ohio 1983) (discussing split among authorities construing section 522(f)). In Losieniecki, for example, Judge Cosetti was confronted with a case factually similar to this one, where property valued at $42,500 was encumbered by three judgment liens and a mortgage totalling $50,015.91. The pertinent facts in Losieniecki were as follows:
 
 
 34
 October 27, 1977 Judgment lien $ 2,640.00
 (Thrift)
November 14, 1978 Mortgage (FHA) 40,864.23
January 5, 1979 Judgment lien 3,150.00
 (Thrift)
March 12, 1980 Judgment Lien 3,361.68
 (Marion Bank) __________
 50,015.91
Fair market value of property 42,50.00
Equity ownership 0
 
 
 35
 The debtors had claimed a $15,000 exemption pursuant to section 522(d)(1). Under the majority's approach, the debtor's "equity" after unavoidable liens was only $1635.77; hence, only a portion of the March 12, 1980, judgment lien would be avoidable pursuant to section 522(f), and the two earlier judgment liens would remain intact.
 
 
 36
 In contrast, Judge Cosetti concluded that all three judicial liens could be avoided pursuant to section 522(f)(1). His conclusion followed from the premise that a judicial lien impairs an exemption to the extent that the lien prevents sufficient value in the property to satisfy the debtor's exemption from passing to the estate at the commencement of the bankruptcy case. Losieniecki, 17 B.R. at 138. Cf. In re Chesanow, 25 B.R. at 231 (judicial liens avoided where debtors had no equity in property, but had an interest in property, including, inter alia, the right to acquire equity in the property in the future). As applied to overencumbered property, the Losieniecki approach would allow the debtor to avoid any judicial lien, regardless of its priority position or the amount of unavoidable mortgages, up to the amount of the allowable exemption ($15,000 in that case). Losieniecki, 17 B.R. at 138. Hence, all three judicial liens were avoided. This expansive application of section 522(f)(1) stands in marked contrast to the "equity" approach adopted by the majority and other courts, but in my view is equally consistent with the statutory language.
 
 
 37
 My approach to the question at hand differs from both the majority's approach and the Losieniecki court's. I conclude that the judicial liens are avoidable in this case because if they are not avoided, upon distribution of the proceeds from the sale of the property, the judicial lienors will benefit from the sale of the property, and the Simonsons' exemption will not.[5] This result, in my opinion, is contrary to the clear congressional intent that section 522(f) be available to benefit the debtor's exemption and his "fresh start," even at the expense of the interests of judicial lienors.
 
 
 38
 I would agree that section 522(f) would not apply if the two unavoidable mortgages in this case were senior to the judicial liens. It seems clear that in such a case the judicial liens would not impair the debtor's exemption because they do not attach to any potential value in the property. That is to say, regardless of whether the liens are avoided in this hypothetical situation, the two mortgages would have first claim on the proceeds of the sale of the property. Because the facts indicate that there would not be enough value in the property to satisfy even these unavoidable security interest, let alone the debtor's exemption or any portion of the judicial liens, the judicial liens could not be said to impair the debtor's exemption.[6] See, e.g., In re Snyder, 32 B.R. 59 (Bankr.M.D.Pa.1983) (debtor could not use section 522(f)(1) to avoid judgment lien junior to first mortgage, where mortgage was security to a loan whose outstanding balance exceeded the fair market value of the property).
 
 
 39
 On these facts, however, the judgment liens do attach to value in the property. I would hold that section 522(f)(1) is available to the debtors in this case, because the debtor's exemption actually will benefit from the avoiding of the judicial lien and the preserving of the lien position in favor of the exemption. See infra part IV. The liens were therefore properly avoided by the bankruptcy court.
 
 IV.
 
 40
 Given its disposition of the section 522(f) issue, the majority does not fully address the analytically separate question whether the Simonsons may preserve the avoided liens for the benefit of their exemption. The district court, while permitting the debtors to avoid the liens, held that the Simonsons could not preserve them for the benefit of their exemption. I believe that the district court erred.
 
 
 41
 The debtor's ability to preserve the avoided liens for the benefit of his exemption stems from section 522(i):
 
 
 42
 (i)(1) If the debtor avoids a transfer or recovers a set-off under subsection (f) [section 522(f) ] or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.
 
 
 43
 (2) Notwithstanding section 551 of this title, a transfer avoided under ... subsection (f) of this section ... may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under ... paragraph (1) of this subsection.
 
 
 44
 11 U.S.C. Sec. 522 (emphasis added). The language of section 522(i) thus distinguishes among: (1) the avoidance of a transfer (in this case, avoidance of the judicial liens pursuant to section 522(f)); (2) "recovery"; and (3) exemption from the estate of the property recovered. See also, Beneficial Finance Co. of Virginia v. Franklin, 26 B.R. 636, 639-40 (W.D.Va.1983) (discussing the separate steps of avoidance of liens, recovery of the avoided liens, and exempting the avoided liens from the estate).
 
 
 45
 The debtor's power to recover avoided transfers is subject to the same limitations that section 550 of the Code, 11 U.S.C. Sec. 550, places on the trustee's ability to recover avoided transfers of property. These limitations relate largely to the trustee's ability to recover from subsequent good faith transferees for value, and would not seem to apply in this case. See generally 3 Collier on Bankruptcy p 522.30, at 522-90 to -91 (15th ed. 1984). Hence, the debtor may recover the avoided judicial lien, and the equitable interest represented thereby merges with the legal title to the property already in the estate. Losieniecki, 17 B.R. at 138.
 
 
 46
 Once the debtor recovers an avoided transfer pursuant to section 522(i)(1), section 522(i)(2) permits the debtor to preserve the avoided transfer the benefit of his exemption, notwithstanding the usual rule under section 551 of the Code, 11 U.S.C. Sec. 551, that avoided transfers are automatically preserved for the benefit of the estate. See 4 Collier on Bankruptcy, p 551.01, at 551-1 (15th ed. 1984). In other words, section 522(i)(2) permits the interest of the debtor's exemption to "stand in the shoes" of the avoided judicial liens.
 
 
 47
 Under my view of this case, therefore, the Simonsons should be permitted to apply to their exemption the value of the avoided liens, $14,411.33, leaving the SBA in the same priority position it occupied prior to the commencement of the case. This result not only effectuates Congress' intent to preserve the debtor's exemption and thereby provide them with a "fresh start," but also prevents a junior encumbrancer from receiving a windfall merely because the debtor chose to avoid the superior judicial liens. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 376, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6332 (noting that a primary purpose of Sec. 551 as a whole is to prevent junior creditors from benefitting at the expense of the estate when senior liens are avoided).[7]
 
 V.
 
 48
 It is apparent that Congress' intent regarding the issue in this case is not clearly discernible either in the Bankruptcy Code itself or in the Code's legislative history. I do not gainsay that the result I reach may work to the disadvantage of a judicial lienor who originally had a valid lien on property in which the debtor once had ample additional equity out of which to satisfy any homestead exemption in the event of bankruptcy. I realize as well that some may object to a result that allows a debtor to obtain his homestead exemption, to the detriment of judicial lienors, even though the debtor knowingly overencumbered a property with consensual liens. In enacting section 522(f), however, Congress has chosen to protect the interests of debtors while singling out judicial lienors as disfavored creditors. Thus, while I recognize that the view expressed by the majority is plausible, I submit that the result I reach better effectuates the fresh start policies under the Code. At the same time, this case illustrates that the issue presented herein may be ripe for legislative clarification.
 
 
 49
 I respectfully dissent.
 
 
 
 *
 Hon. Marvin Katz, United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The second mortgage is guaranteed by the Small Business Administration, which has paid the bank and taken an assignment. The Small Business Administration is the actual appellee
 LIEN DATE FILED AMOUNT
(1) First Mortgage, 5/3/74 $25,145.95
First Bank of Greater
Pittston
(2) Judgment No. 1964 3/5/79 $13,361.33
First Bank of Greater
Pittston
(3) Judgment No. 1416 6/9/80 $ 1,050.00
First Bank of Greater
Pittston
(4) Second Mortgage 1/12/81 $41,314.84
First Bank of Greater
Pittston[1]
 
 
 [1]
 The second mortgage is guaranteed by the Small Business Administration,
 which has paid the bank and taken an assignment. The Small Business
 Administtration is the actual appellee.
 Total encumbrances $80,872.12
 
 
 [1]
 Although the issue is not presented in this case, it would also appear that in the majority's view a judicial lien would not impair an exemption if the value of the property, less the amounts due on all outstanding liens on the property, including judicial liens, equals or exceeds the value of the homestead exemption
 
 
 [2]
 The legislative history of section 541 provides in pertinent part:
 Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property wherever located, as of the commencement of the case.
 The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action.... The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest or leasehold interest, for example.
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6323.
 
 
 [3]
 The legislative history of section 522(b) elaborates on this principle:
 Property may be exempted even is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the "value" of the property for the purposes of exemption. Thus, for example, a residence worth $30,000 with a mortgage of $25,000 will be exemptable to the extent of $5,000.
 H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 360-61 (Sept. 8, 1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6316.
 
 
 [4]
 The court also concluded that avoiding the judicial lien in favor of the debtor's exemption amounted to a rejection of state law granting priority to real estate liens in the order they are recorded. In re Fiore, 27 B.R. 48, 50 (Bankr.D.Conn.1983)
 
 
 [5]
 Of course, the decision of the district court to affirm the avoidance of the liens is not before us, and the judicial lienors will not benefit in any event. In future cases, however, courts applying the majority's rationale will simply leave in place judicial liens similar to those in this case
 
 
 [6]
 In such a case, however, it would appear that the debtor could request relief under section 506 of the Code, 11 U.S.C. Sec. 506. Pursuant to this provision, upon application by a party in interest, a court may divide an undercollateralized security interest into secured and unsecured claims. An improperly secured creditor will be deemed to have a secured claim to the extent of the value of the collateral, and an unsecured claim for the remainder of the debt. Where judgment liens are junior to mortgages which encumber the entire value of the property, "no interest remains to which the defendant's judicial lien could attach." In re Snyder, 32 B.R. 59, 60 (Bank.M.D.Pa.1983). In this situation, the court may treat the judicial lien as an unsecured claim, to be satisfied out of the estate
 By the same token, in the case at hand, section 506 would appear to provide an alternative way for the Simonsons partly to avoid the SBA's mortgage. It would appear that the SBA's security interest in this case should be treated as a secured claim only to the extent of $18,692.72 (the difference between the sum of the Bank's first mortgage and both judicial liens, and $58,250, the stipulated value of the property). The balance of SBA's mortgage ($22,622.12) would be treated as an unsecured claim.
 
 
 [7]
 Prior to lien avoidance, the SBA's mortgage of $41,314.84 was preceded by a first mortgage of $25,145.95 and two judgment liens in amounts of $13,361.33 and $1,050.00 respectively. The total of the first three encumbrances totalled $39,557.28 on property valued at $58,250. In the absence of lien avoidance, payment of the first mortgage and two judgment liens would have left only $18,692.72 as secured for the fourth mortgage held by the SBA. The remaining balance of the SBA's mortgage, $22,622.12, would have been treated as an unsecured claim pursuant to 11 U.S.C. Sec. 506(a). See supra note 6
 Assuming that the Simonsons were permitted to avoid the intervening judgment liens under Sec. 522(f)(1) and then to preserve the lien positions for their benefit under section 522(i)(2), the SBA would remain in fourth position, would receive $18,692.72 as a secured claim, and would be treated as a general creditor as to the balance of $22,622.12 as unsecured--the same result as above. Thus, the SBA's interest would not be impaired if the Simonsons "stand in the shoes" of the avoided judgment lienors.