**In re Paul MENELL, Debtor.**

**Bankruptcy No. 92–37288.**

United States Bankruptcy Court, D. New Jersey.

Nov. 8, 1993.

Savanna Mapelli, Teich, Groh and Frost, Trenton, NJ, for debtor.

Dean C. Waldt, Davis, Reberkenny & Abromowitz, Cherry Hill, NJ, for the First Nat. Bank of Boston.

## *MEMORANDUM OPINION*

STEPHEN A. STRIPP, Bankruptcy Judge.

Debtor Paul Menell filed a motion to avoid the judicial liens of First National Bank of

Boston ("FNB") and Key Bank [1] under section 522(f)(1) of title 11 of the United States Code ("Bankruptcy Code" or "Code"). The debtor claims an exemption of $7500 in his residential property, which is valued at $112,-500 and encumbered by mortgages totalling $110,400. FNB holds a judicial lien on the debtor's residence in the amount of $5,502,-956.90.

The debtor seeks to avoid FNB's judicial lien in its entirety. FNB does not object to avoidance of its judicial lien up to the amount of debtor's available exemption, but argues that section 522(f)(1) does not allow the debtor to avoid its judicial lien above that amount. For the reasons discussed below, the court holds that the debtor may only avoid the judicial lien up to the amount of the debtor's exemption.

This court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

### Findings of Fact

■ On November 17, 1992, the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. The debtor listed his residence at 21 Irongate Village, Metuchen, New Jersey (hereinafter "the property") among his assets. Based on a tax assessment for 1991 to 1992, the debtor valued the property at $112,500 as of the petition date. The property was encumbered by the following liens on the petition date [2]:

| | |
|---|---|
| Carteret Savings Bank First Mortgage: | $ 41,000 |
| American Union Savings Bank Second Mortgage: | $ 69,400 |
| Judgment of First National Bank of Boston: | $ 5,502,956 |
| Judgment of Key Bank: | $ 250,000 |

On February 23, 1993 the property was abandoned by the chapter 7 trustee pursuant to Code section 554, after notice was given and no objections were filed. The debtor received a discharge on March 1, 1993.

■ On April 23, 1993 the debtor filed the subject motion. FNB filed an objection. The court conducted a hearing on July 20, 1993, at which time FNB agreed not to dispute the amount of the mortgage liens or their validity.[3] The debtor has claimed an exemption of $7500 pursuant to Code section 522(d)(1).[4]

### Conclusions of Law

■ The issue before this court is the extent to which FNB's judicial lien can be avoided pursuant to Code section 522(f)(1), which states that the debtor may "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is (1) a judicial lien...." 11 U.S.C. § 522(f)(1).

The Court of Appeals for the Third Circuit has held that the phrase "interest of the debtor in property" as used in section 522(f)(1) means "an interest of the debtor measured by taking into account those interests of other parties which may not be avoided under section 522(f)." *Simonson v. First Bank of Greater Pittston (In re Simonson )*, 758 F.2d 103, 105 (3d Cir.1985). Here, the two unavoidable mortgages on the residential property total $110,400. The debtor asserts that the value of the residence as of the petition date was $112,500 and FNB has not

1. Key Bank failed to respond to the debtor's motion, and the court declines to raise an objection *sua sponte* on Key Bank's behalf. The debtor's motion to avoid Key Bank's judicial lien in its entirety is therefore granted.

2. The debtor listed these amounts for the mortgages in his certification in support of this motion. The debtor used the same amounts in the schedules he filed with his petition. On July 12, 1993, the debtor filed a supplemental certification in which he listed slightly lower amounts for the mortgages. The proper date for valuing the debtor's equity interest in the property is the petition date. *In the Matter of Arevalo*, 142 B.R.

111, 114 (Bankr.D.N.J.1992). Thus, the court will use the original amounts that the debtor listed in his schedules.

3. A concession or stipulation by counsel in open court is the equivalent of a judicial admission and binds the party making it. *In re Sanglier*, 124 B.R. 511, 513 n. 3 (Bankr.E.D.Mich.1991).

4. Section 522(d)(1) provides that each debtor may exempt his "aggregate interest, not to exceed $7,500 in value, in real property ... that the debtor ... uses as a residence...." 11 U.S.C. § 522(d)(1).

produced any evidence to support any other valuation. The court therefore accepts the debtor's valuation of the property for purposes of this motion. Thus, the value of the debtor's equity in the property is $2100 ($112,500 property value minus $110,400 total mortgage liens), and the debtor may take an exemption under section 522(d)(1) in that amount. The debtor is entitled to utilize section 522(f)(1) to avoid FNB's judicial lien to the extent that his equity interest in the property is impaired by the judicial lien. *Simonson,* 758 F.2d at 106.

The question is whether the debtor can avoid the entire judicial lien or only part of the lien up to the exemption amount. The court must resolve this dispute by first looking at the language of the statute itself. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Specifically, the meaning of the terms "to the extent" and "impairs" are at issue here. "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. ——, ——, 113 S.Ct. 1489, 1494, 123 L.Ed.2d 74, 85 (1993) (citation omitted). The ordinary meaning of the phrase "to the extent" is the "amount, or degree to which a thing extends" or the "scope" or "limits" to which something applies. *Webster's New World Dictionary* 217 (1979). The phrase "to the extent" in Code section 522(f)(1) therefore means that the debtor's ability to avoid the judicial lien is limited to a certain degree or amount, i.e. the amount by which it "impairs" the debtor's exemption. The ordinary meaning of the word "impairs" is "to make worse, less". *Webster's New World Dictionary* 301 (1979). *Simonson* held that an exemption of an equity interest in real property can only be "impaired" or lessened to the extent of the value of such interest. *Simonson,* 758 F.2d at 106. As discussed above, the debtor's exemption is limited to his equity in the property after the mortgages, which is $2100. Thus, FNB's judicial lien can only be avoided to that extent.

Where the statutory language is clear "the inquiry should end" as "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair Enterprises, Inc.,* 489 U.S. at 241, 109 S.Ct. at 1030 (citation omitted). The language of Code section 522(f)(1) clearly expresses Congressional intention to permit avoidance of judicial liens only to the lesser of $7500 or the value of the debtor's equity. *In re Sanglier,* 124 B.R. 511, 514 (Bankr.E.D.Mich.1991). When Congress intended to give the debtor or the trustee the power to avoid a lien or transfer entirely under certain conditions, it did so without using limiting phrases such as "to the extent." *See e.g.,* 11 U.S.C. § 544(a) and (b) (giving the trustee the power to avoid transfers of the debtor's property or obligations incurred by the debtor that could be avoided by certain creditors or bona-fide purchasers); 11 U.S.C. § 547(b) (giving the trustee the power to avoid preferential transfers); 11 U.S.C. § 548(a) (giving the trustee the power to avoid fraudulent transfers). Hence, the court should give meaning to the limiting words that Congress used in section 522(f)(1). *See City National Bank v. Chabot (In re Chabot),* 992 F.2d 891, 894 (9th Cir. 1993) (holding that "a simpler view of section 522(f), which protects the amount of the exemption only, is dictated by the plain meaning of the statute"); *Wachovia Bank and Trust Co. v. Opperman (In re Opperman),* 943 F.2d 441, 443–44 (4th Cir.1991) (stating that when deciding whether a judicial lien can be avoided entirely the court does not need to look beyond the statute itself); *In re D'Amelio,* 142 B.R. 8, 10 (Bankr.D.Mass. 1992) (holding that partial avoidance of the judicial lien was "true to the statute"); *In re Cerniglia,* 137 B.R. 722, 725 (Bankr.S.D.Ill. 1992) (stating that section 522(f)(1) "was not intended to free the debtor's property completely of judicial liens", but was enacted to preserve the debtor's exemptions up to a certain amount); *In re Prestegaard,* 139 B.R. 117, 119 (Bankr.S.D.N.Y.1992) (holding that "[t]here is nothing in the statute which permits a debtor to avoid a judicial lien to the extent it exceeds the otherwise available impaired exemption"); *In re Sanglier,* 124 B.R. at 515 (same). The cases to the contrary on which the debtor relies are unpersuasive.

There is force to the debtor's argument that this interpretation of Code section 522(f)(1) limits the debtor's "fresh start", in that any payments by the debtor on the mortgages or any increase in the value of the property will inure to the benefit of FNB by increasing the value of its judicial lien. That is, however, the inexorable result of the phrase "to the extent" in that section. Moreover, this interpretation is consistent with *Simonson, supra,* which this court is obligated to follow. In *Simonson* the court held that the debtor could only take his exemption under section 522(d)(1) to the extent of the value of his interest in residential real property. 758 F.2d at 106. Thus, a debtor whose residence is overencumbered with unavoidable liens cannot use section 522(f)(1) to avoid judicial liens at all under *Simonson.* Under the approach that the debtor urges the court to follow, if a debtor has equity of only one dollar in his residence he could avoid a judicial lien entirely because it impairs his one dollar exemption, while a debtor with no equity in his property could not avoid such lien at all because of *Simonson.* Such a drastic difference in results for little equity and for no equity makes no sense and would foster unnecessary litigation over valuation.

### Conclusion

Based on the language of section 522(f)(1), the court holds that the debtor may avoid FNB's judicial lien to the extent that it impairs his exemption, i.e. $2100. Key Bank's judicial lien is avoided entirely for the reasons stated in footnote 1, *supra.* The debtor's attorney shall submit an order consistent with this opinion within ten days on notice to FNB under D.N.J. Bankr.Ct.R. 4(d).