**In re Keith A. WILKINSON, Jr. and Ann L. Wilkinson, Debtors.**

**Bankruptcy No. 91–10676 K.**

United States Bankruptcy Court, W.D. New York.

July 18, 1995.

$125,000 judgment lien even as against the case Trustee, then their homestead is clearly of "inconsequential value" to the Trustee under § 554(a), and an order of abandonment shall issue. Otherwise, the Court should proceed to consider the Debtors' other arguments as to why they are entitled to such an order.[1]

The Court rules that whatever the rights might be that a debtor acquires under § 522(i)(2) as against junior lienors in instances in which the Trustee abandons the property,[2] a debtor does not thereunder acquire rights against the Trustee in excess of the maximum aggregate dollar amount of the homestead exemption, here $20,000.

Consequently, the Debtor's present motion must continue for consideration of other arguments and evidence.

## BACKGROUND FACTS

The Debtors, husband and wife, filed their Chapter 7 petition on February 27, 1991. They scheduled the value of their homestead—which consisted of three adjoining farm parcels, although the Debtors apparently are not farmers—at a value of $115,000, but encumbered by mortgage indebtedness of $91,250 and a judgment lien of over $125,-000. The judgment lien had been taken by a surety, "Simco and Erie General Insurance Co.," on a personal guarantee of a surety bond which Simco had posted in connection with the Debtors' construction business. In August of 1991, the Debtors obtained an order setting aside the Simco judgment under § 522(f)(1) as impairing their homestead exemption. In their § 522(f)(1) motion (of which the Trustee had notice), the Debtors valued the homestead at $110,000. Simco did not appear in opposition to the motion, and the order was granted.

The Debtors based their $110,000–$115,000 valuations on a "Market Value Analysis" performed in 1991 which fixed a value of approximately $129,000, which they thought was a bit too high. They had bought the land in

William A. Savino, Damon & Morey, Buffalo, NY, for Trustee.

Robert Radel, Lipsitz, Green, Fahringer, Rolls, Salisbury & Cambria, Buffalo, NY, for debtors.

MICHAEL J. KAPLAN, Chief Judge.

The question presented to the Court is whether and to what extent a Chapter 7 debtor is subrogated to the rights of a judgment lien creditor under 11 U.S.C. § 522(f)(1) and § 522(i)(2), for purposes of the debtor's subsequent effort to obtain an order for the Trustee to abandon the homestead under § 554(a).

Here, the avoided judgment lien was a $125,000 lien (of a value of zero at the relevant point in time, however, because there was no equity above mortgages and exemptions to support any portion of the judgment). If the Debtors succeeded to the

---

1. It was agreed that the Court would first rule on the present question, in case it resolved the entire dispute before the Court.

2. That is a question for another day.

1988 for approximately $45,000 and had built the house themselves.

In October of 1991, for reasons unrelated to the present motion, there was a substitution of Chapter 7 trustees.

Both the initial Trustee and the replacement Trustee had expressed an interest in some non-exempt real estate that had been scheduled and in shares of stock owned by the Debtors in a family construction business, and both had engaged in significant discovery in those regards. From the time of the appointment of the successor Trustee in October 1991, until June of 1994, the record of the case reflects pursuit by the Trustee of the stock holdings, but no suggestion at all of any pursuit by the Trustee of any interest in the Debtors' homestead.

This changed on June 6, 1994. On that date, this Court appointed a broker to sell the Debtors' homestead. The affidavit of the broker, which accompanied the ex parte application of the Trustee, indicated that the broker was to be employed by the Debtors, but the Trustee's ex parte application indicated that the broker was to be employed by the Trustee. Although the Court has no independent recollection of this particular order, it is reasonably certain that if the Court were not then under the impression that the Debtors were engaging this broker jointly with the Trustee, or at least assenting to a sale, the Court would have made inquiry into this matter and would not have simply signed the application appointing the broker. Although the Court has not taken any evidence, it is possible that the Debtors did not learn until May of 1995 that the broker had been appointed a year earlier to sell their house. A further opportunity for proffers in this regard will be provided, as set forth at the conclusion of this Decision.

On August 10, 1994, the Trustee filed a "no asset report" (a form report indicating that there were no assets in this case to be distributed and asking that the case be closed), but the Trustee made the handwritten notation thereon: "This case might still become an asset case." It is clear from the record that the Trustee was still pursuing the matter of the Debtors' interest in the shares of stock, and because of the appointment of the broker two months earlier, it is possible that the Trustee was also referring to pursuit of an interest in the Debtors' homestead. There is nothing in the record to suggest why the Trustee felt compelled to file such an unusual internally inconsistent report.

The Office of the Clerk, evidently treating the report as a routine no asset report, prepared and submitted to me a routine order under § 350 declaring the estate to be fully administered and the case ready to be closed, and the order was signed and entered on October 14, 1994. Notice of the order closing the case was apparently routinely sent in due course to all parties in interest, including the Trustee and the Debtors and their counsel.

█ Nonetheless, in December of 1994, the Trustee asked the Debtors if they would permit him to have the property appraised, and they—in what they state to have been a showing of good faith to demonstrate that they had nothing to hide regarding their 1991 valuation of the property—permitted the appraisal. That appraisal, performed in January of 1995 by a licensed broker who is not, however, a licensed appraiser, and who was the broker who expected to sell the property, purported to provide a valuation of the property of over $230,000 *as of the time of the filing of the Petition in 1991.*[3]

Early in March of 1995, the Trustee applied for reopening of the case to sell the stock in the construction corporation, and the case was in fact reopened. The Court approved the $172,000 stock sale on March 22, 1995. On May 19, 1995 the Trustee unequivocally notified the Debtors of his intent to sell the homestead. During the period between the filing of the petition in 1991 and May of 1995, the Debtors maintained, insured, protected and preserved the homestead, improved the homestead, and even refinanced the homestead (in February of

---

**3.** The Court gives little weight to an appraisal by a broker who expects to offer the property for sale, who is not licensed as an appraiser, and who purports to reconstruct the value four years ago of a homestead that the Debtors bought as bare land and then developed by themselves (which property, therefore, did not have a record of prior sales as a single family home).

1994).[4] It seems to be agreed that if the Court were to consider a motion by the Trustee to sell the property, it must consider a substantial offset in favor of the Debtors under § 503 for the preservation, protection and improvement of the "property of the estate," but also consider a similar offset in the opposite direction for the fair rental value of the premises. Thus, one of the alternative arguments made by the Debtors is that the Trustee should abandon the property now, because he currently has no economic interest to warrant sale. There has not yet been, however, any hearing or stipulation addressing the values of the various offsets.

At hearing the Court sua sponte raised the question of whether the $125,000 judgment lien which the Debtors avoided in 1991 inured to the benefit of the Debtors or the Trustee, for purposes of determining the Trustee's economic interest in the property. This is an issue which will be addressed in today's decision.

Finally, the Debtors argue that as a matter of equity, four and one-half years into the Chapter 7 case is too late for the Trustee to be attempting to take away their home, even though he offers to set aside their $20,000 homestead exemption.[5]

The first and third arguments will be addressed after further proceedings. Only one issue will be considered today.

## PRESERVATION OF THE JUDGMENT LIEN UNDER 11 U.S.C. § 522(i)(2)

■ At argument, the Court asked why the Debtors' avoidance of the $125,000 judgment lien in 1991 had not been preserved by them pursuant to § 522(i)(2), in which case the Trustee could not claim to have an eco-

nomic interest in the real estate unless he could establish that its value is more than $125,000 greater than the aggregate liens on the property plus the Debtors' exemption.

Upon careful examination of § 522(i)(2), one finds that it is either vague or ambiguous.[6] It states, in pertinent part: "Notwithstanding section 551 of this title, a transfer avoided under ... subsection (f) ... of this section ... may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property...." The provision begins speaking about "a transfer" but ends speaking about "such property" without describing what the term "such property" refers to. The legislative history does nothing to enlighten the statutory language. However, § 522(i)(2) expressly states that it displaces and supersedes § 551 of the Bankruptcy Code, with regard to exempt property. Section 551 states, in pertinent part: "Any transfer avoided under section 522 ... of this title ... is preserved for the benefit of the estate but only with respect to property of the estate." The legislative history to that provision is clear, stating that § 551 "as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided." H.R.Rep. No. 595, 95th Cong., 1st Sess., at 54 (1978).

■ This clarifies the purpose of § 522(i)(2), which is to prevent junior lienors from improving their position at the expense of the Debtors, when the Debtors exercise their power under § 522(f) to set aside judgment liens. For example, if there were a tax lien junior to a judgment lien, and if § 522(i)(2) did not exist, a debtor would gain nothing by avoiding the judgment lien[7] be-

---

**4.** At argument, Debtors' counsel indicated that the mortgage refinancing lender is a financial institution. It is surprising that such an institution would refinance without the signature of a bankruptcy trustee. However, the homestead is in Wyoming County, and there is no evidence of whether notice of the bankruptcy was filed in that county in accordance with § 549(c). Consequently, the mortgage might be valid against the Debtors' estate.

**5.** The Debtors further argue that whether the closing of the case was inadvertent or not, the closing triggered an abandonment of their homestead to them as a matter of law, under § 554(c).

In light of today's holding, it will not be necessary to address that argument unless and until it is concluded that this homestead was not previously abandoned by the Trustee's inaction.

**6.** The Court in *In re Simonson*, 758 F.2d 103, 106 (3rd Cir.1985), called it "opaque."

**7.** Until October 22, 1994, there was some question as to whether the debtor would be able to avoid judgment liens that are senior to non-avoidable liens such as tax liens and certain statutory liens. But as to cases filed on or after that date, § 522(f)(2)(A) was added, and makes it clear that the existence of junior non-avoidable

cause the junior, non-avoidable lien would simply slide up to encumber the debtor's otherwise exempt "equity." Under § 522(i)(2), the debtor steps into the shoes of the lien position of the judgment holder whose lien has been avoided. This, of course, costs junior lienors nothing, for they had no rights against the holder of the senior lien, and lose nothing when the senior lienor's rights are succeeded to by the debtor.

The presence of § 522(i)(2) makes it clear that: (1) if the property is not administered in the bankruptcy case (which is to say if the property is ultimately abandoned by the trustee) the debtor's "fresh start" has been enhanced, as against the junior lienor, by the superior position that had been obtained by the judgment creditor, and the form of that enhancement is that the debtor will enjoy the fruits of future appreciation in the property up to a point;[8] and (2) if the property is to be sold in the bankruptcy case, the dollar amount of the homestead exemption (here $20,000) will have to be paid to the debtor in the same priority sequence as the judgment lien would have enjoyed, since the judgment was in an amount in excess of $20,000.

The thought that the Court had raised at argument—that perhaps the Debtor would enjoy not only the judgment lienor's priority status, but also the dollar amount of the avoided judgment lien, was not correct and is not a sustainable interpretation of § 522(i)(2)'s unclear terms. Consideration of some simple hypotheticals explains why.

Consider the hypothetical of debtors, a married couple, who have a home of $110,000 value, and a mortgage of $90,000. They have claimed the $20,000 homestead exemption. They also have a non-exempt asset which may take the trustee a considerable period of time to administer. Six or eight months into the case, fearing that the value of their home may increase substantially (from improvements, making payments on the mortgage, enhanced real estate values occasioned by adjacent development, etc.) these debtors make a motion under § 554(a), seeking an order of abandonment of the property on the grounds that it is "of inconsequential value and benefit to the estate." The trustee opposes the motion, arguing that the property may already have increased in value to the point where it is not of inconsequential value and benefit to the estate.

Now consider a different hypothetical that is identical to the first in every way except one. The one difference is that these Debtors had a particularly diligent creditor to whom they owed $200,000, and who obtained a judgment lien on the homestead sometime before bankruptcy (but not within the ninety day preference period). After these debtors obtain the § 522(f)(1) order setting aside the judgment lien on the basis of the $110,000 valuation,[9] does § 522(i)(2) permit them to wield the entire $200,000 amount as a "sword" against the bankruptcy trustee in order to establish that the property is of "inconsequential value and benefit to the estate" under § 554(a)?

If they may, then the debtors in the second hypothetical will have a much easier time overcoming the trustee's opposition to their motion, and of winning an order of abandonment, than the debtors in the first hypothetical. But it could not have been Congress' intent to let the debtors so succeed to the attributes that the diligent creditor had acquired, and to leave the debtors in the first hypothetical so much worse off, where the trustee is the adversary.

It indeed may be argued that because the bankruptcy trustee and the estate he or she represents would enjoy no rights against the judgment lienor were there no provision like § 522(f)(1), there is no harm caused the estate by letting the debtors assert the full dollar amount of the judgment creditor's claim against the trustee. However, the damage done to the judgment creditor would

---

liens is not a barrier to the exercise of § 522(f)(1) with respect to senior judgment liens.

**8.** It is not clear whether the debtor would "step into the shoes" of the judgment lien creditor as to the full amount of that creditor's claim, or the full "value" of that claim (here "zero"), or only

$20,000 of the claim. That question remains for a different day and a different case.

**9.** Matters arising under § 522 of the Bankruptcy Code are resolved by reference to the "fair market value as of the date of the filing of the petition" because § 522(a)(2) so provides.

be enormous and could not have been Congress' intended result. The judgment creditor, whose lien has become an unsecured claim by virtue of the exercise of § 522(f)(1), would additionally find that by virtue of his diligence he has armed the debtor with a weapon that results in the inability of that judgment creditor and all other unsecured creditors to enjoy the enhanced value in the real estate, otherwise realizable by the trustee, and which they could have all shared.

The imprecise language of § 522(i)(2) cannot be interpreted to yield such inequitable and nonsensical results. Its only common sense interpretation results in placing the debtors in the two hypotheticals on an even footing as against the trustee. The debtors in the first hypothetical had no judgment liens and no non-exempt equity in their property. They should be free to enjoy their fresh start, which includes the right to benefit from future appreciation in the property. (This would, of course, also be true even as to debtors who had no equity at all in the property as of the time of bankruptcy.) The debtors in the second hypothetical are entitled to exercise the avoiding power to obtain the same fresh start as the debtors in hypothetical number one.

■ The rights bestowed by § 522(i)(2) are rights against the judgment creditor and, if there are any junior non-avoidable liens that would otherwise slide up, they are rights against that junior lienor.[10] Those rights are not rights exercisable against the trustee beyond the dollar limits of the homestead exemption.

There is one instance in which a debtor with judgment liens may emerge from bankruptcy in better condition than a debtor without judgment liens, and that is where there are junior, non-avoidable liens against the property. Where the debtor has no intervening judgment liens that can be avoided and preserved for the debtor's benefit, future appreciation is going to inure to the benefit of the junior non-avoidable lien. But where the debtor has been able to avoid and preserve an intervening judgment lien, future appreciation will inure to the benefit of the debtor, up to a point.[11] But if there is any anomaly in that result it arises not out of the operation of bankruptcy law as such, but out of the fact that a creditor obtained rights that were superior to the rights of the tax lienor, and Congress elected to permit debtors to succeed to those rights.

■ In essence, when a debtor seeks to assert the rights he or she acquired under § 522(i)(2) against the trustee in a § 554(a) abandonment action, the debtor may be said to have succeeded to the priority status and the attributes of the avoided judgment lien, and may do so in an amount not to exceed the dollar amount of the judgment lien or the aggregate amount of the homestead exemption (here $20,000), whichever is less.[12]

## CONCLUSION

The Debtors' present Motion cannot be resolved on the basis of the rights they acquired under § 522(i)(2). Further proceedings are required. Despite suggestion to the contrary,[13] this Court is not prepared to rule today that there is no longer any vitality to the view that "a formal act [of abandonment] is not absolutely essential." [14] Therefore, in the Court's view, the most efficient next step

---

**10.** *See supra* note 7.

**11.** *See supra* note 8. If the judgment lien was in the amount of $1 million and is senior to a tax lien of $2,000, does § 522(i)(2) give the debtor the opportunity to enjoy the benefits of future appreciation up to $1 million before having to worry about equity against which the tax lien may be foreclosed, or may the debtor enjoy appreciation only up to the maximum dollar amount of the homestead exemption before encountering such worries?

**12.** If the judgment lien avoided is, for example, only $7,000, the other $13,000 which the debtor

may assert against the trustee under § 554(a) derives not from § 522(i)(2), but from the statute which permits a debtor in bankruptcy and his or her spouse to exempt a homestead of an aggregate value not greater than $20,000.

**13.** *See In re Prospero,* 107 B.R. 732, 735 (Bankr. C.D.Cal.1989) (stating that, "... the Code provides that abandonment cannot be achieved by a trustee's inaction, or by actions short of notice to creditors of intent to abandon....")

**14.** 4A Collier, 14th ed., ¶ 70.42[3], p. 505.

(one that would defer and perhaps avoid the need for further appraisals) would be to address the question of whether the Trustee did in fact abandon this homestead (subject to court approval) by course of action or inaction. Counsel will appear before the Court on July 27, 1995 at 3:00 p.m. to make proffers in that regard, operating on an assumption (not yet so ruled) that under some showing the Court could be convinced that the Trustee has "constructively" or "impliedly" abandoned the homestead.[15]

SO ORDERED.

---

**15.** If the Debtors would instead prefer to press their § 554(a) argument by means of a valuation hearing, they may consult with their opponent in my Chambers.