**In the Matter of Cecilia May PADEREWSKI (Bankrupt).**

**C. J. PADEREWSKI, Petitioner and Appellant,**

v.

**John H. BARRETT, Oscar F. Irwin, and Lewis H. Silverberg, Co-Trustees and Appellees.**

No. 75–1858.

United States Court of Appeals, Ninth Circuit.

Nov. 28, 1977.

L. William McGrath, Jr., San Diego, Cal., for petitioner and appellant.

William S. Bannasch, San Diego, Cal., for co-trustees and appellees.

Before GOODWIN and SNEED, Circuit Judges, and HAUK *, District Judge.

GOODWIN, Circuit Judge:

C. J. Paderewski appeals from an order of a referee in bankruptcy dividing the proceeds from the sale of community real property owned by appellant and his former wife, the bankrupt. Paderewski contends that the referee incorrectly measured the interest which passed to the bankrupt's trustees when she filed her petition in bankruptcy. The United States District Court for the Southern District of California affirmed the referee's order. We reverse.

The Paderewskis were married in 1935. Appellant was granted an interlocutory

---

* The Honorable A. Andrew Hauk, United States District Judge for the Central District of California, sitting by designation.

judgment of divorce in California on July 25, 1967. No appeal was taken from the interlocutory judgment. A final judgment of divorce was entered on April 15, 1969.

In the interlocutory judgment of divorce, the trial judge divided the community property equally between the parties. Among the community assets was the Paderewskis' residence, which the trial judge ordered to be sold. The court ordered that the first trust deed and taxes on the property, the costs of sale, the community debts listed at $15,000, and the attorneys' fees for the parties were to be paid out of the gross proceeds before any division of the proceeds was made. Appellant was ordered to pay the taxes and payments due on the property until the time of sale. Appellant was to be reimbursed out of the gross proceeds for any payments he made on the property's first trust deed and taxes between the date of the interlocutory decree and the date of sale, and for any payments he made on the $15,000 of community debts. After all of the above payments and reimbursements had been made out of the gross proceeds, the net proceeds from the sale were to be divided equally between the parties.

On December 30, 1970, appellant's wife filed a petition in bankruptcy. The bankrupt's financial plight was caused by debts she had incurred after the interlocutory decree. Her husband was not liable for these debts. Although almost two and a half years had passed since the interlocutory judgment of divorce, the Paderewskis' residence had not yet been sold on the date the bankrupt filed her petition.

On June 3, 1970, the divorce court entered an order allowing the sale of an approximately two-acre part of the community residential real property for the sum of $65,000. One-half, or $32,500, was paid as a down payment, $7,500 was paid in July of 1970, and the balance, $25,000, was paid in July of 1971. Pursuant to court order, the down payment was used to pay the attorneys' fees from the divorce, the costs of sale, and the costs of partial reconveyances by the first trust deed and mortgage holders. The remainder of the proceeds was divided equally between the parties,[1] with the exception of the $25,000 payment in July of 1971, which was divided between the parties as follows: $23,500 to appellant and $1,500 to the bankrupt, subject to the rights of her trustees in bankruptcy.

When the bankrupt's trustees sought to sell her interest in the remaining real property in 1972, appellant agreed to join in the sale so that the property could be sold as a whole. The referee in bankruptcy ordered the property sold at public sale. The order of sale referred to the bankrupt's "one-half interest" in the real property, but noted that appellant had reserved the right to a further hearing regarding the allocation of the proceeds from the sale. The property was sold on January 23, 1973, for $103,738.28.

The bankrupt had recorded declarations of homestead in June 1966 and May 1967. The United States District Court held, in 1973, that she was entitled to the full statutory homestead exemption in effect in California on the date of the filing of the petition in bankruptcy, which was $15,000.

When the referee allocated the proceeds from the sale of the property, he held that the bankrupt's homestead exemption was to be paid out of the gross proceeds of the sale. The first trust deed and the cost of sale were also to be paid out of the gross proceeds. The remainder, the net proceeds, he divided equally between the parties—one half to appellant and one half to be distributed between the bankrupt's secured creditor and her trustees in bankruptcy. No provision was made for the payment of

---

1. Pursuant to an order dated October 21, 1970, part of the $7,500 payment was used to pay the balance of the attorneys' fees from the divorce and the remainder was divided equally between the parties. An order dated June 7, 1971 provided for the equal division of an $1,875 interest payment between appellant and the bankrupt, with her interest subject to the rights of her trustees in bankruptcy. The order of June 7, 1971 also provided for the sale of another small parcel of community property land to the same buyer for the price of $4,000. According to that order, the $4,000 was also to be evenly divided between the parties, with the bankrupt's interest subject to the rights of her trustees in bankruptcy.

community debts out of the gross proceeds. The referee ordered the proceeds distributed as follows:

| | | |
|---|---|---|
| 1. | Mrs. Paderewski | $ 15,000.00 |
| 2. | La Jolla Federal Savings and Loan Association | 26,705.72 |
| 3. | Cost of Sale | 1,876.76 |
| 4. | Mr. Paderewski | 30,202.90 |
| 5. | Alvarado Investment Co. | 15,330.25 |
| 6. | Trustee | 14,622.65 |
| | | $103,738.28 |

The referee found. that appellant had paid $33,421.67 for "[t]rust deed payments, taxes, maintenance and improvements" on the real property between the date of the interlocutory judgment of divorce in 1967 and the sale of the property in 1973. The referee also found that appellant had paid a total of $5,719.08 on the community debts before the bankrupt filed her petition in bankruptcy in 1970.

The referee decided that appellant was entitled to reimbursement for only one-half of the $33,421.67 he had spent on trust deed payments, taxes, maintenance, and improvements ($16,710.84), because these payments benefited both parties equally. Appellant was found to be entitled to reimbursement for the $5,719.08 he had paid on community debts before the bankrupt filed her petition in bankruptcy, but the referee discharged the bankrupt from the remaining community obligations and held that appellant was entitled to no further reimbursement for payments on the community debts since he alone was now liable for them. The referee found that appellant had already been reimbursed in the amount of $23,500 out of the proceeds from the earlier sale of a portion of the property and that this amount covered the reimbursements to which appellant was entitled. The referee therefore gave appellant no further reimbursement out of the proceeds from the sale of the remaining property.

Appellant contends that the referee's allocation of the proceeds was incorrect for two reasons. First, appellant argues that the bankrupt's only interest in the real property at the time she filed her petition in bankruptcy was her interest in the net proceeds as awarded in the 1967 interlocutory judgment of divorce. Appellant contends that the referee should therefore have allocated the proceeds according to the order in that judgment and that under that judgment he is entitled to full reimbursement for his payments on the community debts and the first trust deed, taxes, maintenance, and improvements on the property. Second, appellant argues that the referee erred in awarding the homestead exemption to the bankrupt out of the gross proceeds from the sale. Appellant contends that the homestead exemption should have been taken from the bankrupt's share of the net proceeds. We will discuss appellant's contentions separately.

*Bankrupt's Interest*

Section 70(a) of the Bankruptcy Act vests the trustee in bankruptcy with the title to all nonexempt property owned by the bankrupt at the time of the filing of the petition. 11 U.S.C. § 110 (1970). The trustee is given only those interests in property possessed by the bankrupt under state law. *In the matter of Telemart Enterprises, Inc.*, 524 F.2d 761, 765 (9th Cir. 1975), *cert. denied, sub nom. Holzman v. Lewis*, 424 U.S. 969, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976).

In this case, the trustees argue that title to a one-half interest in the community property residence passed to the trustees on the date the bankrupt filed her petition. In taking this position, the trustees fail to recognize the interlocutory judgment of divorce which had been in effect for almost two and a half years.

■ The Bankruptcy Act generally does not vest the trustee with any better right or title to the bankrupt's property than the bankrupt had at the moment of bankruptcy. *In the matter of Forester*, 529 F.2d 310, 316 (9th Cir. 1976).

■ Under California law, if an interlocutory divorce decree is not appealed and becomes final, it is *res judicata* with respect to awards of community property. *Harley v. Whitmore*, 242 Cal.App.2d 461, 470, 51 Cal.Rptr. 468, 474 (1966). Therefore, the

trustees in the instant case cannot claim title to a greater interest than that awarded to the bankrupt in the interlocutory decree.

The interlocutory order of an equal division of community property does not necessarily mean that the parties were each awarded a one-half interest in each community asset. *Green v. Green*, 27 Cal.App.2d 99, 101, 80 P.2d 513, 514 (1938).

▮ A California trial court has discretion to divide community assets in any way which complies with statutory provisions. *In re Marriage of Brown*, 15 Cal.3d 838, 848 n. 10, 126 Cal.Rptr. 633, 639 n. 10, 544 P.2d 561, 567 n. 10 (1976). The court may combine all the community property assets into one fund and then divide the fund equally. Full title to one asset, such as a house or a car, may be awarded to one party, so long as the total amounts awarded to both parties are equal. *See Green v. Green, supra.*

Moreover, California courts often deduct the community debts from the gross value of the community property before dividing the residue. *See Wong v. Superior Court*, 246 Cal.App.2d 541, 54 Cal.Rptr. 782 (1966); *Mears v. Mears*, 180 Cal.App.2d 484, 4 Cal. Rptr. 618 (1960). Since such deductions are considered to be part of the division and allocation of the community property (*see In re Marriage of Fonstein*, 17 Cal.3d 738, 748, 131 Cal.Rptr. 873, 879, 552 P.2d 1169, 1175 (1976)), the bankrupt's trustees cannot claim that her community-property interest in the house gave her a one-half interest in the gross proceeds.

Under the two-part test of Section 70(a)(5) of the Bankruptcy Act, the trustees' title is limited to those interests which, at the time of the petition, could have been (1) transferred by the bankrupt, or (2) levied upon and sold under judicial process against her, or otherwise seized, impounded, or sequestered. 11 U.S.C. § 110(a)(5) (1970).

The trustees' claim of a one-half interest fails the first part of this test. Because of the *res judicata* effect of the divorce decree, the bankrupt could not have transferred any greater interest than that awarded to her in the decree. Moreover, the interlocutory decree declared that "[p]laintiff hus-

band shall have the authority to handle all arrangements pertaining to the sale, including listing the property with brokers, and the defendant wife shall have only the right to accept or reject any offers to purchase * * *." A supplemental order, in force at the date of the filing of the petition in bankruptcy, specifically enjoined the bankrupt from selling, disposing of, or encumbering the community real property.

The trustees' claim fares no better under the second part of the Section 70(a)(5) test. The bankrupt's creditors could not levy upon or attach a one-half interest in the property after the divorce decree. The delay in the sale of the property did not affect the rights of the parties or their creditors. A situation similar to that in the case at hand arose in *Harley v. Whitmore*, 242 Cal. App.2d 461, 51 Cal.Rptr. 468 (1966). In *Harley*, the interlocutory divorce decree awarded the community-property residence wholly to the wife. The decree directed the husband to execute a deed conveying his interest in the property to his wife. The husband did not execute the necessary documents. A judgment creditor of the husband thereafter attempted to levy a writ of execution upon the property. The court held that the interlocutory decree was *res judicata* and that it had divested the husband of all interest in the residence. The court went on to state that the husband's failure to execute the documents necessary to carry out the property award could not place him, or any creditor claiming through him, in any better position. 242 Cal.App.2d at 470, 51 Cal.Rptr. at 474.

The bankrupt and her trustee describe appellant as a judgment creditor and argue that because his "judgment" (the divorce decree) was not properly recorded, he is not entitled to reimbursement out of the gross proceeds and cannot claim reimbursement out of bankrupt's share of the proceeds except as a low priority unsecured creditor. This focus on the interest of appellant is misplaced. The issue in this case is the interest of the bankrupt.

As we have discussed above, the bankrupt's interest was fixed and limited by the divorce decree. Appellant's right to reimbursement out of the gross proceeds for

payments made on community debts and on the property cannot be denied without undoing the division of the community property made by the trial court on the dissolution of the marriage.

For example, the referee in bankruptcy held that the interlocutory decree's provision that the community debts be paid out of the gross proceeds should be disregarded because the bankrupt's liability on those debts had been discharged. Because the provision for the payment of the community debts was an indivisible part of the division of the community property, the referee's holding has the effect of increasing the bankrupt's share of the proceeds.

After the final divorce decree was granted, the bankrupt had no title to the $15,000 of the (future) gross proceeds which the divorce decree ordered to be set aside for the payment of community debts. The fact that the bankrupt's liability on the debts has been discharged in bankruptcy cannot now give her title to any part of that $15,-000. Therefore, appellant is entitled to full reimbursement for the amount he paid on the community debts from the date of the interlocutory decree to the date of the sale of the property.

For the same reason, the bankrupt and her trustees cannot prevent appellant from being reimbursed for payments made on taxes on the property. The effect of a denial of full reimbursement for these tax payments would be to increase the bankrupt's share of the proceeds by one half the amount paid by appellant.[2]

Appellant is also entitled to reimbursement for the amount he spent on first-trust-deed payments. At the time of the interlocutory divorce decree, the Paderewskis' residential property was worth approximately $150,000. There was a $45,000 encumbrance, leaving an equity of approximately $105,000. The decree provided that appellant was to be reimbursed out of the gross proceeds for the payments on the first trust deed. In other words, the increase in the equity in the property due to appellant's separate property payments on the first trust deed after the date of the decree was to be allocated to him. According to the interlocutory decree, the bankrupt's share of the proceeds was not to be increased by the appellant's payments.[3] Although the actual amount to which the bankrupt was entitled could increase with a rise in value of the property, her proportionate share was fixed as of the date of the decree.

■ We hold, therefore, that appellant is entitled to full reimbursement for the payments he made on the community debts from the date of the interlocutory decree to the present. We also hold that appellant should be reimbursed in full for all payments he made on the first trust deed and taxes on the property from the date of the

**2.** This result is demonstrated by the following hypothetical model.

| | |
|---|---|
| Net proceeds from sale (after payment of encumbrances and cost of sale) | $75,000 |
| Total tax payments made by appellant | 10,000 |

(a) If proceeds are divided according to the interlocutory decree:

| Appellant | Bankrupt |
|---|---|
| $32,500 | $32,500 |
| -10,000 | -0 |
| 22,500 | 32,500 |
| +10,000 | +0 |
| $32,500 | $32,500 |

(b) If proceeds are divided with no reimbursement to appellant:

| Appellant | Bankrupt |
|---|---|
| $37,500 | $37,500 |
| -10,000 | -0 |
| $27,500 | $37,500 |

**3.** In the interlocutory judgment of divorce, the trial judge stated:

" * * * It is further ordered that the plaintiff, during the pendency of this sale, pay the obligation owing on the first trust deed * * in the approximate amount of $342.00 per month and any taxes which may become due and owing, but that *the plaintiff shall receive a credit for such payments out of the sale of the property as herein provided.* " (Emphasis added.)

decree to the date of sale.[4] Such reimbursements should be paid out of the gross proceeds from the 1973 sale to the extent the reimbursements to which appellant is entitled exceed the $23,500 reimbursement appellant received out of the proceeds from the 1970 sale.[5] The remaining community obligations should also be paid out of the gross proceeds before the division of the remainder between appellant and the bankrupt and her trustees.

However, appellant is not entitled to reimbursement out of the gross proceeds for the payments he made on maintenance and improvements on the real property in question. The interlocutory decree made no provision for the reimbursement of these payments out of the gross proceeds from the sale of the property. The decree stated:

"* * * Any and all debts or obligations incurred by the defendant wife hereafter in the maintenance of the family residence if she continues to reside therein, other than the specific payments on the trust deed and taxes, shall be the obligation of the defendant wife."

Since appellant was under no obligation to make payments for maintenance and improvements on the property, his right to reimbursement may depend on a finding of some sort of contract between appellant and the bankrupt with regard to these payments. In any case, any reimbursement to which appellant is entitled for these payments must come from the portion of the proceeds allocated to the bankrupt's trustees for the payment of her creditors.

4. Appellant also paid a $250.00 fee for an appraisal of the real property which had been ordered by the California court in 1971. Since the appraisal fee can be considered part of the cost of sale, appellant is entitled to full reimbursement out of the gross proceeds for this payment.

5. The amount of reimbursement to which appellant is entitled out of the gross proceeds of the 1973 sale is to be calculated in the following way:

1. Reimbursable payments made by appellant:

   a. $33,421.67   amount spent on trust deed, taxes, maintenance and improvements

   _ Figure A   amount spent on maintenance and improvements (non-reimbursable)

   $Figure B   amount spent on trust deed and taxes

## The Homestead Exemption

State law determines the extent of the bankrupt's exemptions and from what property they are allowable. *See In re Kanter*, 505 F.2d 228, 230 (9th Cir. 1974). In this case, the parties agree that the bankrupt is entitled to the full $15,000 exemption allowed under Cal.Civ.Code § 1260.

The issue is whether the bankrupt's homestead exemption should be applied against the gross proceeds from the sale or against the portion of the net proceeds allocated to the bankrupt.

Cal.Civ.Code § 1238 provides that where the claimant of the homestead exemption is an unmarried person "the homestead may be selected from any of his or her property."

The discussion above of the bankrupt's interest in the property shows that appellant and the bankrupt were co-owners of the property on the date of the filing of the petition in bankruptcy, but because of the divorce decree, the bankrupt's interest was limited to one-half of the net proceeds. Without appellant's consent, the trustees of the bankrupt could not force a sale of appellant's interest in the property. If appellant had not joined in the sale, the bankruptcy trustees would have been left to sell the bankrupt's interest alone, and, under California law, her homestead exemption would have been applied against the proceeds from the sale of her interest. *See Schoenfeld v. Norberg*, 11 Cal.App.3d 755, 90 Cal.Rptr. 47 (1970); *Strangman v. Duke*,

b. $Figure B   amount spent on trust deed and taxes

   +5,719.08   amount spent on payment of community debts before bankrupt filed for bankruptcy

   +Figure C   amount of subsequent payments on community debts

   $ Figure D   total amount of reimbursement to which appellant is entitled

2. Reimbursement already paid to appellant out of the gross proceeds from the 1970 sale:

   $23,500.00

3.   $ Figure D

   -23,500.00

   $ Figure E   total amount of reimbursement to which appellant is entitled out of the gross proceeds from the 1973 sale

140 Cal.App.2d 185, 295 P.2d 12 (1956). The result must be the same where appellant agrees to participate in the sale of the property in order to make the property more marketable.

We hold, therefore, that the referee in bankruptcy erred in awarding to bankrupt the $15,000 homestead exemption out of the gross proceeds.

We reverse and remand for the division of the proceeds from the 1973 sale of the Paderewskis' property in accordance with this judgment. The proceeds from the sale are to be distributed in the following order:

```
1)  La Jolla Federal Savings
       and Loan Association      $26,705.72

2)  Cost of Sale                   1,876.76

3)  Outstanding Community Debts

4)  Reimbursement to Mr. Paderewski[5]

5)  Remainder to be divided equally between
    Mr. Paderewski and the bankrupt, subject
    to the rights of her trustees and secured
    creditor.
```

If the value of the bankrupt's interest [6] is less than $30,330.25 ($15,000 homestead exemption plus the $15,330.25 claim of secured creditor), the court below must determine whether bankrupt's homestead exemption takes priority over the claims of her secured creditor.

New findings are required with respect to the amount appellant paid on the first trust deed and taxes since he is to be given no reimbursement out of the gross proceeds for payments made for maintenance and improvements on the property. New findings are also required as to the amount of the community obligations paid by appellant up to the present and the amount still outstanding on such debts, including interest.

Reversed and remanded for further proceedings.

---

**6.** The calculation of the bankrupt's total interest should include both the amount previously distributed to her, subject to the rights of her trustees, out of the proceeds of the 1970 sale and the amount distributed to her out of the proceeds of the 1973 sale. (See note 1.)