**In re Roger NIELSEN, Debtor.**

**Pamela WIGET, Appellant,**

v.

**Roger NIELSEN, Appellee.**

**BAP No. SC–95–1573–JOAs.**

**Bankruptcy No. 92–10862–A7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 19, 1996.

Decided April 26, 1996.

Frederick C. Phillips, San Diego, CA, for Appellant.

Dion G. Dyer, San Diego, CA, for Appellee.

Before: JONES, OLLASON, and ASHLAND, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

## I. FACTS

The debtor, Roger Nielsen ("Nielsen") is an attorney practicing law in San Diego, California. In May, 1988, Nielsen entered into a marital property settlement with his non-debtor spouse in which Nielsen received a twenty-five percent (25%) interest in their residential. real property and his wife received a seventy-five percent (75%) interest. Despite the execution of the settlement agreement, Nielsen and his wife did not dissolve their marriage and they continue to live together in the residence. On October 11, 1989, Nielsen recorded a declaration of homestead in San Diego County for his twenty-five percent (25%) interest in the residence.

Appellant, Pamela Wiget ("Wiget") is a former client of Nielsen. Wiget sued Nielsen for attorney malpractice in San Diego Superior Court and received a judgment in the amount of $134,028. Wiget filed an abstract of judgment in San Diego County on August 13, 1992.

On September 11, 1992, Nielsen filed a petition for chapter 7 relief in bankruptcy.[1] In his bankruptcy, Nielsen claimed a $75,000 homestead exemption. On September 16, 1994, Nielsen filed a motion to avoid Wiget's judicial lien on the grounds that the lien impaired Nielsen's homestead exemption. Wiget opposed the motion. Wiget presented evidence of an appraisal valuing Nielsen's residence at $740,000. Nielsen disputes this appraisal, but did not produce evidence of his own appraisal. The residence has outstanding encumbrances, exclusive of the homestead exemption and Wiget's lien, in the amount of $219,000.

On December 8, 1994, the trustee of Nielsen's estate filed a notice of abandonment of the residence. A hearing on Nielsen's motion to avoid the lien was held on that same day before the Honorable Louise DeCarl Adler, United States Bankruptcy Judge. The main issue at the hearing was what formula to apply in determining whether Nielsen had a surplus of equity in the residence for a judgment lien to attach, pursuant to California Code of Civil Procedure § 704.950(c). If no equity existed, then Nielsen's homestead exemption would be impaired. The bankruptcy court found that no equity existed after applying a formula which deducted all liens and encumbrances, as well as the homestead exemption, from Nielsen's twenty-five percent (25%) interest in the value of the property, rather than deducting from the total value of the property. Using this formula, the court found that the lien did impair Nielsen's homestead exemption and avoided the lien. Wiget timely appealed.

## II. ISSUE

Did the bankruptcy court err in avoiding the judicial lien on debtor's residence on the grounds that the lien impaired debtor's homestead exemption?

## III. STANDARD OF REVIEW

■ The determination of a homestead exemption based on undisputed facts is a legal conclusion interpreting statutory construction which is reviewed de novo. *In re Mayer*, 167 B.R. 186, 188 (9th Cir. BAP 1994). We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Chabot*, 992 F.2d 891, 893 (9th Cir.1993).

## IV. DISCUSSION

■ In order for us to determine whether a lien should be avoided on the grounds that it impairs a debtor's homestead exemption, we must undergo a two step process. The first step is to utilize state law in decid-

1. Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* And to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

ing whether a valid judicial lien attached to the debtor's property. *In re Jones,* 180 B.R. 575, 577 (9th Cir. BAP 1995). Once we have determined that a lien did attach to the debtor's property, we must ascertain whether the lien impairs the debtor's exemption in bankruptcy. "Whether a particular lien impairs an exemption is an issue of federal bankruptcy law." *Chabot,* 992 F.2d at 894.

### A. Attachment Under State Law

■ Under the state law analysis, California Code of Civil Procedure ("C.C.P.") § 697.310(a) provides that the recordation of an abstract of judgment creates a lien on real property. *In re Mulch,* 182 B.R. 569, 575 n. 11 (Bankr.N.D.Cal.1995). However, where the abstract of judgment is recorded after the debtor has recorded a declared homestead, a judgment lien generally will not attach to the debtor's property pursuant to C.C.P. § 704.950. *Chabot,* 992 F.2d at 893. An exception to this general rule was created with the amendment of C.C.P. § 704.950. *Jones,* 180 B.R. at 578. The statute was amended to include subsection (c) which allows a judgment lien to attach to a declared homestead, in the amount of any surplus over the total of:

"(1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.

(2) The homestead exemption set forth in Section 704.730." C.C.P. § 704.950(c) (1987). This added subsection makes it clear that a judicial lien will attach to any equity that a debtor has in the property after deducting all prior liens as well as the homestead exemption.

### B. Impairment Pursuant to § 522(f) and Chabot

Once a lien has attached to surplus equity, the court must determine if that lien impairs the homestead exemption pursuant to § 522(f). Prior to the Bankruptcy Reform Act of 1994,[2] section 522(f) provided:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien....

11 U.S.C. § 522(f) (1988).

The seminal case defining impairment under § 522(f) was *In re Chabot,* 992 F.2d 891 (9th Cir.1993). In *Chabot,* the Ninth Circuit proceeded to apply the two step method to determine first if a valid lien attached under C.C.P. § 704.950(c), and then to see if the lien impaired the debtor's homestead exemption. The creditor in *Chabot* had filed an abstract of judgment after the debtor had recorded a declared homestead. The debtor's residence was valued at $400,000. There was a first deed of trust in the amount of $86,412 and a second deed of trust in the amount of $38,540. The debtor claimed a $45,000 homestead exemption. The Ninth Circuit deducted the deeds of trust and the exemption from the value of the home and found that there was surplus equity in the amount of $230,046. *Id.* at 894. The lien was in the amount of $241,579. The *Chabot* court held that because there was surplus equity, the lien attached to it. *Id.* at 892. The *Chabot* court further held that although the lien was some $11,000 more than the amount of surplus equity, the debtor's exemption was not impaired because the amount of exemption was not diminished in value. *Id.* at 895. Thus, the entire lien could not be avoided. *Id.*

Prior to *Chabot,* courts would bifurcate liens between secured and unsecured. A lien would be secured up to the amount of surplus equity in the residence, and be unsecured for the balance. Courts would then avoid the unsecured portion of the lien because it would remain after discharge, attach to post-petition appreciation in the property and impair the debtor's right to a fresh start. *In re*

---

**2.** The Bankruptcy Reform Act of 1994 amended 11 U.S.C. § 522(f). However, the amendments do not apply retroactively to cases filed before October 22, 1994. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, Sec. 702. This case was filed before that date. Thus, the pre-Bankruptcy Reform Act language applies.

*Galvan*, 110 B.R. 446, 451–52 (9th Cir. BAP 1990). *Chabot* altered this bifurcation process by holding that the unsecured portion of a lien will not be avoided because post-petition appreciation should inure to the benefit of the creditor.[3] Thus, if there is surplus equity in the residence, the lien will not be avoided at all.

There is a different situation than *Chabot* however, where there is no surplus equity in the property for the lien to attach. We note the case of *In re Mulch*, 182 B.R. 569, 575 (Bankr.N.D.Cal.1995), which states "the existence of a lien in such a case decreases the value of the property and impedes the ability of the debtor to realize the full amount of the homestead exemption."[4] The existence of surplus equity is the very issue in this appeal. Neither party disputes the fact that Wiget's lien attached to Nielsen's property in the amount of any surplus equity after deducting all prior liens and the homestead exemption. Consequently, under *Chabot*, if surplus equity existed, the debtor's exemption would not be impaired, and the entire lien could not be avoided. What is disputed is the existence of any surplus equity at all. Or to be more precise, whether in calculating surplus equity, the prior liens and the homestead exemption should be deducted from the total value of the property, or from Nielsen's twenty-five percent (25%) interest in the property. The bankruptcy court held that all prior liens and the homestead exemption should be deducted from Nielsen's fractional interest. Under this formula, no surplus equity existed for the lien to attach. Further the court found, that because of the non-existence of surplus equity, Wiget's lien would necessarily impair Nielsen's exemption. The court consequently avoided the lien. We disagree with the formula and the reasoning applied by the bankruptcy court and **HEREBY REVERSE.**

### C. Calculation of Surplus Equity

The California Court of Appeals held in *Schoenfeld v. Norberg*, 11 Cal.App.3d 755, 90 Cal.Rptr. 47 (1970), that where a husband and wife owned their residence in joint tenancy, an execution on homestead by the husband's creditor could not occur unless equity existed after all encumbrances and the homestead exemption were deducted from the husband's one half interest. The court in *Schoenfeld* conceded that if a fractional interest in the property were sold and all of the encumbrances paid from the proceeds, the purchaser would be entitled to contribution against the remaining cotenants. *Id.* 90 Cal. Rptr. at 54. The court in *Schoenfeld* stated that were the property held as community property, the full value of the property could be sold to satisfy all of the encumbrances. *Id.* 90 Cal.Rptr. at 49.

The holding in *Schoenfeld* was followed by a line of cases including *In re Jacobs*, 48 B.R. 570 (Bankr.S.D.Cal.1985), which the bankruptcy court in the present case authored and relied upon in finding that Nielsen did not have surplus equity. *Jacobs* involved a motion for summary judgment on a complaint for declaratory judgment that the debtor's residence was community property. *Id.* at 570. The court in *Jacobs* found that the creditor had not met his burden of proof in showing that the residence was community property. *Id.* at 574. The court cited *Schoenfeld* when finding that no equity existed in the debtor's one half interest after the deed of trust and homestead exemption were deducted from the debtor's fractional interest. *Id.* at 573. Thus, the creditor could not force a sale of the residence. *Id.* at 573–74.

In 1991, the Ninth Circuit addressed this issue in *In re Reed*, 940 F.2d 1317 (9th Cir.1991). *Reed* involved a voluntary sale of a residence held by the debtor and a non-debtor spouse in joint tenancy. The trustee

---

**3.** This holding was overruled by the Bankruptcy Reform Act of 1994 which amended 11 U.S.C. § 522(f)(2). Section 303 of the Bankruptcy Reform Act allows avoidance of the unsecured portion of the lien to the extent that the lien exceeds the value of surplus equity. However, as previously stated, the amendments to § 522(f)(2) do not apply retroactively to cases filed before October 22, 1994. Bankruptcy Reform Act of 1994,

Pub.L. No. 103–394, 108 Stat. 4106, Sec. 702. As this case was filed before that date, the amendments do not apply and *Chabot* is applicable.

**4.** However, if the lien did not attach, then certainly it should not be avoided because it would not impair any interest.

sought turnover of the proceeds of the sale. The bankruptcy court analyzed the *Schoenfeld* decision and held it to be inapplicable. *See* the bankruptcy court decision reported at *In re Reed,* 89 B.R. 100, 106 (Bankr. C.D.Cal.1988). The bankruptcy court stated that *Schoenfeld* makes sense in the context of execution sales law because pursuant to C.C.P. § 704.820(a), a judgment creditor cannot sell the joint tenancy interest of a non-debtor spouse. *Id.* This statute supports the public policy which protects a non-debtor spouse from an involuntary sale of their residence. *Id.* The bankruptcy court stated that this public policy, however, is inapplicable to a debtor and a non-debtor spouse who voluntarily sell their residence. *Id.* Thus, the bankruptcy court concluded that the encumbrances should be deducted from the gross proceeds of the sale, not the debtor's fractional interest. *Id.* The bankruptcy court also found *Schoenfeld* inapplicable to a sale of a residence by a trustee, reasoning that a trustee is empowered to sell the interest of a non-debtor spouse pursuant to § 363(h). *Id.* at n. 1. The Ninth Circuit affirmed the bankruptcy court and held *Schoenfeld* and the line of cases that followed it to be inapplicable pursuant to the same reasoning as the bankruptcy court. *Reed,* 940 F.2d at 1323. The Ninth Circuit noted "*Schoenfeld* itself makes it clear that there is no problem and its formula need not be applied when the property is subject to sale in its entirety." *Id.* (citing *Schoenfeld,* 90 Cal.Rptr. at 51). The Ninth Circuit stated, "[s]ince it is probable that the trustee could have sold the property in its entirety, it is sensible to divide the proceeds as if he had done so." *Id.* Consequently, the Ninth Circuit found *Schoenfeld* to be a decision about "powers of sale rather than a case about valuation;" *Id.,* and a "case about creditor's powers under California law, not about a trustee's powers under bankruptcy law." *Id.* at 1332 n. 7 (citing *In re Paderewski,* 564 F.2d 1353, 1360 (9th Cir.1977) (deducting encumbrances and costs of sale off the top of the proceeds of the sale and dividing the net proceeds equally between the two parties)).

The Ninth Circuit in *Reed* proceeded to value the debtor's interest in the residence after netting all encumbrances against the gross value of the total property, not just against the debtor's interest. *Id.* at n. 9.

We are bound by the reasoning enunciated by the Ninth Circuit and the bankruptcy court in *Reed,* and hold *Schoenfeld* and its progeny to be inapplicable to the present case. Although, *Reed* involved a voluntary sale of a residence and not the issue of lien avoidance, the Ninth Circuit implied that their ruling would remain unchanged even if the debtor had not voluntarily sold the residence, because the trustee could have sold the property under § 363. *Id.* at n. 8. We find that *Reed* is applicable in a lien avoidance situation. We are aware of the case of *In re Rhoads,* 130 B.R. 565 (Bankr.C.D.Cal. 1991), which involved lien avoidance where the debtor owned his residence in joint tenancy with his non-debtor spouse—a case involving strikingly similar facts to this present appeal. The court in *Rhoads* applied the reasoning of *Schoenfeld* and calculated debtor's equity by deducting encumbrances from the debtor's fractional interest in the property, rather than from the entire value of the property. Although, the court in *Rhoads* did not specifically cite to *Schoenfeld,* it relied on *In re Schneider,* 9 B.R. 488 (N.D.Cal.1981) and *In re Miles,* 35 B.R. 52 (Bankr.E.D.Cal. 1983), two of the cases which followed *Schoenfeld,* and incidentally two cases which the Ninth Circuit specifically cast doubt upon in *Reed.* We therefore find *Rhoads* to be unpersuasive.

■ We find that § 363(h), state partition law and common sense dictate that the holding in *Reed* apply in the context of lien avoidance. We hold that in order to determine the existence of surplus equity, all encumbrances must be deducted from the total value of the residence before the debtor's fractional interest is determined. If after deducting the homestead exemption from the debtor's fractional interest in total equity, surplus equity exists, the lien should not be avoided.[5]

**5.** This result may be altered somewhat by the 1994 amendments to 11 U.S.C. § 522(f) which overruled *Chabot,* and allow partial avoidance of

a lien to the extent that the lien exceeds the value of surplus equity. However, because the 1994 amendments do not apply retroactively to this

1. *Section 363(h) allows the trustee to sell a non-debtor spouse's interest in the residence.*

■ Section 363(h) provides that the trustee may sell the estate's interest and the interest of any co-owner in the property, including when the property is held in tenancy in common, joint tenancy, or tenancy by the entirety. 11 U.S.C. § 363(h) (1994). Thus, in a § 363(h) sale, Congress has decided not to support the public policy of *Schoenfeld,* which protects a non-debtor spouse's interest from being forcibly sold under California execution law. In a § 363(h) sale, the value of a debtor's interest is calculated after deducting encumbrances from the entire value of the property. *In re Tsunis,* 39 B.R. 977, 979 n. 3 (E.D.N.Y.1983), *aff'd,* 733 F.2d 27 (2d Cir.1984). Not only did Congress not intend for the policy in *Schoenfeld* to apply to sales under § 363, Congress also did not intend for the calculation of a debtor's interest as enunciated by *Schoenfeld* to apply.

2. *Under California partition law, encumbrances would be paid from sale proceeds, rather than from one party's share.*

■ By analogy, once a residence has been sold pursuant to partition, California partition law provides a defined order of distribution of sales proceeds. C.C.P. § 873.820 requires that proceeds be distributed in the following order:

(a) Payment of the expenses of sale.

(b) Payment of the other costs of partition in whole or in part or to secure any cost of partition later allowed.

(c) Payment of any liens on the property in their order of priority except liens which under the terms of sale are to remain on the property.

(d) Distribution of the residue among the parties in proportion to their shares as determined by the court.

C.C.P. § 873.820 (1980). It is clear that California has defined a process for the calculation of equity. Equity is determined from the balance of the total value of the property less any encumbrances, before individual fractional interests are even considered. The state law, when valuing an individual's fractional interest, correctly deducts the jointly held encumbrances from the jointly held value of the property.

3. *Common sense dictates that surplus equity must be calculated after deducting all joint encumbrances from the total value of the residence, not from debtor's fractional interest.*

■ We see by analogy to sales under § 363(h) and under California partition law that the formula for calculating equity in *Schoenfeld* was only meant to apply to the limited situation of a forced sale under California law by a creditor, who is not empowered to sell the interest of the non-debtor spouse who holds a joint-tenancy interest. Any other reading of *Schoenfeld* and the line of cases that follow it would lead to an absurd result. Under bankruptcy law however, it is clear that the trustee is empowered to sell the entire residence including the interest of the non-debtor spouse. Thus, it is common sense in bankruptcy in a lien avoidance context that joint encumbrances be deducted from the joint value of the property. The policy of *Schoenfeld* protecting the non-debtor spouse from an involuntary sale of their home does not apply in a lien avoidance situation.

The bankruptcy court's finding that no surplus equity existed was based on the formula in *In re Jacobs,* 48 B.R. 570 (Bankr. S.D.Cal.1985), a case which followed *Schoenfeld.* We hold *Schoenfeld* and *Jacobs* to be inapplicable and hold that in a lien avoidance situation, a lien will be avoided as impairing a debtor's exemption if no surplus equity exists. In the situation where the property is held in joint tenancy, tenancy in common or tenancy by the entirety, encumbrances must be deducted from the total value of the residence before the debtor's fractional interest is determined. If after deducting the homestead exemption from debtor's fractional in-

case, *Chabot* is applicable to our analysis, and we decline to address this issue in the context of the

amendments.

terest, surplus equity exists, the lien should not be avoided.

In this case, the residence is valued at $740,000. After deducting the joint encumbrance of $219,000, the residence has total equity of $521,000. Nielsen has a twenty-five percent (25%) interest in the total equity which amounts to $130,250. If we deduct the full $75,000 homestead exemption from Nielsen's equity, there is $55,250 in surplus equity to which the lien can attach. Under *Chabot*, the existence of surplus equity indicates that the debtor's homestead exemption will not be impaired by the lien, and the lien should have been allowed in its entirety. Thus, the lien should not have been avoided and the bankruptcy court erred by so avoiding it. Accordingly, **WE REVERSE.**

### D. The Lien Cannot Be Avoided as a Preference

Nielsen argues that Wiget's lien was avoidable as a preference pursuant to § 522(h) because it was filed within ninety days of Nielsen's filing of a petition in bankruptcy. Section 522(h) allows the debtor to avoid a transfer of debtor's property "to the extent that the debtor could have exempted such property" if the trustee could have avoided the transfer and did not do so. 11 U.S.C. § 522(h) (1994). Wiget argues that § 522(h) is not applicable where Nielsen's exemption is not impaired because surplus equity exists after deducting the exemption from Nielsen's fractional equity in the property. Nielsen cites *In re Fragapane*, 108 B.R. 585 (Bankr.N.D.Ohio 1989), as standing for the proposition that § 522(h) is not conditioned upon whether an exemption is impaired, but instead gives a debtor "unfettered authority" to avoid a lien. However, in *In re Jardine*, 120 B.R. 559, 562 (Bankr.D.Idaho 1990), the court stated, "[i]f Congress intended the debtor to have unfettered avoidance powers, what was the need for the limitations contained in section 522(f) or section 522(h)?" The court then held that to the extent of any equity over the homestead exemption and any prior liens, the debtor could not seek to avoid the lien as a preference under § 522(h). *Id.* at 562–63. *Jardine* was followed by a number of cases including *In re Merrick*, 151 B.R. 260, 262 (Bankr.D.Idaho 1993), which held that the debtor does not "have full unilateral avoidance powers" and that the debtor is subject to the restrictions of § 522(h). Thus, *Fragapane* stands as the lone decision for the proposition that § 522 is not conditioned upon whether an exemption is impaired. This panel is persuaded instead by the holding in *Jardine* and will not extend a debtor's avoidance powers beyond the plain language of § 522(h). The plain language of § 522(h) is clear that a debtor has avoidance powers only to the extent that the debtor could have exempted the property. We have already decided that Nielsen's exemption was not impaired by the lien and that surplus equity existed for the lien to attach. Thus, Nielsen cannot avoid the lien as a preference under § 522(h).[6]

## V. CONCLUSION

We hereby find that for lien avoidance purposes, when calculating surplus equity in a jointly held residence, all prior liens must be deducted from the fair market value of the property in its entirety, rather than from the debtor's fractional interest. Utilizing the above formula in this case, we are led to the conclusion that surplus equity existed in the property for Wiget's lien to attach, and the homestead exemption was not impaired. Accordingly, the lien should not have been avoided and **WE REVERSE.** Further, if surplus equity exists in the property and the lien does not impair the exemption, then the lien cannot be avoided as a preference pursuant to § 522(h).

6. As previously discussed, the 1994 amendments may lead to a different result. However, we decline to address that result because that issue is not before us at this time.