**Rosemary WHITE, Debtor.**

**No. 02–51190–MM.**

United States Bankruptcy Court, N.D. California.

Nov. 23, 2005.

Rodney M. Kleman, Law Offices of Rodney M. Kleman, Monterey, CA, for Debtor.

## OPINION ON MOTIONS TO AVOID JUDICIAL LIENS

MARILYN MORGAN, Bankruptcy Judge.

### INTRODUCTION

In these lien avoidance motions, the issue before the court is one of statutory construction of 11 U.S.C. § 522(f)(2)(A). More specifically, the question is whether the language "the debtor's interest in the property" requires that computations with respect to jointly owned property be based upon only the debtor's share rather than the value of the entire property.

### FACTUAL BACKGROUND

The relevant facts are uncontroverted. Rosemary White filed this chapter 13 case without the joinder of her estranged spouse, Charles White, who was incarcerated. As of the petition date, she and Charles owned as joint tenants the real property commonly known as 881 Marne Drive, Hollister, California, where she

presently resides. She listed the market value of the real property as $375,000 and claimed a homestead exemption of $75,000 pursuant to Cal. C.C.P. § 704.720.

The real property was encumbered by the following recorded liens.

| Date Recorded | Description of Secured Claim | Amount |
|---|---|---|
| 05/30/95 | Wells Fargo Mortgage, Inc.—First deed of trust | $148,392.33 |
| 12/18/95 | Wilshire Credit Corp.—Second deed of trust | 6,975.00 |
| 11/23/99 | Chicago Title Insurance Company—Abstract of judgement | 35,694.00 |
| 01/25/00 | Raymond J. Montes and Margaret L. McWilliams–Montes (collectively, "Montes")—Abstract of judgment | $54,412.00 |
| 04/05/00 | Bad Boys Bail Bonds/Family Financial—Third deed of trust | 21,635.00 |
| 02/01/01 | Douglas B. Alexander and Nancy Jacobs–Alexander—Abstract of judgment encumbering interest of Charles White only | 48,889.20 |
| 03/15/01 | Leslie Esmay and Bill James—Abstract of judgment | 30,000.00 |
| 03/15/01 | Leslie Esmay and Bill James—Abstract of judgment encumbering interest of Charles White only | 200,000.00 |
| 05/22/01 | Dean E. Gage and Sally C. Gage—Abstract of judgment | 20,000.00 |
| 06/05/01 | Albert's Auto Electric—Abstract of judgment | 3,643.73 |
| 08/10/01 | Eric E. Johnson—Abstract of judgment encumbering interest of Charles White only | 5,055.00 |
| 07/12/02 | James Kitchens and Susan Kitchens—Abstract of judgment encumbering interest of Charles White only | 100,000.00 |
| 09/23/03 | Arturo Ojeda—Abstract of judgment encumbering interest of Charles White only | 148,482.14 |
| | **TOTAL** | $823,178.40 |

White filed motions pursuant to § 522(f) to avoid all of the judicial liens except the lien of the Alexanders. Both Chicago Title and Montes objected on various grounds. All other judicial liens were avoided when the claimants defaulted. Only the legal issues are presently before the court.

### LEGAL DISCUSSION

The Bankruptcy Code authorizes the debtor to avoid certain liens pursuant to § 522(f)(1)(A), which provides in pertinent part:

(f)(1) [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is—

(A) a judicial lien. . . .

Based on a division in caselaw of what constitutes an impairment, the section was amended in 1994 to clarify when a lien is impaired by providing a simple mathematical formula. *In re Kolich,* 328 F.3d 406, 408 (8th Cir.2003). Section 522(f)(2)(A), which was added by the Bankruptcy Reform Act of 1994, provides:

(f)(2)(A) [A] lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Now, however, there is a division of authority among the courts that have considered application of the amendment to jointly owned property. *See In re Freeman,* 259 B.R. 104, 110–12 (Bankr.D.S.C. 2001) (comparing the two lines of cases). One line of cases applies the plain meaning of § 522(f)(2)(A) and construes "the debtor's interest in the property" to refer only to the debtor's partial interest. These courts have held that the formula requires that the full amounts of all liens and the debtor's exemption be deducted from the value of the debtor's partial interest in the property rather than from the value of the entire property. *In re Cozad,* 208 B.R. 495 (10th Cir. BAP 1997); *Summit Bank v. The Vessel "Harbor Light,"* 260 B.R. 694 (D.N.J.2001); *In re Piersol,* 244 B.R. 309 (Bankr.E.D.Pa.2000); *In re Moe,* 199 B.R. 737 (Bankr.D.Mont.1995).

The other line of cases holds that application of the plain meaning of § 522(f)(2)(A) is absurd and uses a different formula. Courts adopting this approach first calculate the net equity in the property by deducting the full amount of all consensual liens from the total value of the property to determine whether any equity remains for the debtor. The amount of the homestead exemption is then deducted from the debtor's interest to determine impairment. These cases assert that a literal application of § 522(f)(2)(A) has the effect of creating a windfall for the debtor at the expense of a lienholder whose lien is avoided. *In re Miller,* 299 F.3d 183 (3rd Cir.2002); *In re Lehman,* 205 F.3d 1255 (11th Cir.2000); *In re Nelson v. Scala,* 192 F.3d 32 (1st Cir. 1999); *In re Ware,* 274 B.R. 206 (Bankr. D.S.C.2001); *In re Dolan,* 230 B.R. 642 (Bankr.D.Conn.1999). The theory relied upon by these courts is that the plain meaning produces a result not intended by Congress. They cite to the maxim of statutory construction that "the plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(*quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).

The Ninth Circuit has not addressed the issue of joint ownership in a case filed since the 1994 amendments became effective. In a case commenced before the effective date of the amendment, *In re Nielsen,* 197 B.R. 665 (9th Cir. BAP 1996), the Bankruptcy Appellate Panel held that where the debtor jointly owns property with a third party, the court must deduct all liens and the homestead exemption from the total value of the property to determine whether surplus equity exists to which a lien can attach. Unhappily, the *Nielsen* case relied in part upon *In re Chabot,* 992 F.2d 891 (9th Cir.1993), a decision that the amendment was expressly designed to overrule. H.R Rep. No. 103–835, at 53 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3362. As a result, the reasoning of *Nielsen* has been superceded.

The courts that have departed from the plain meaning of § 522(f)(2)(A) have focused on the concern over an unintended windfall to the debtor. In reaching its decision in *In re Lehman,* 205 F.3d 1255, the Eleventh Circuit looked beyond the plain language of the statute to the legislative history to the 1994 amendment, which noted that the amendment adopted the formula in *In re Brantz,* 106 B.R. 62 (Bankr.E.D.Pa.1989). H.R REP. No. 103–835, at 52 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361. Significantly, however, *Brantz* did not involve jointly owned property. As a result, the Eleventh Circuit's reliance on the legislative history

is misplaced because it is based upon the false premise that the *Brantz* formula extends to cases involving jointly owned property.

■ Since these circuit court decisions, the Supreme Court has issued a strong mandate not to rewrite otherwise plain legislation from the bench. *See Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)(plain meaning applied notwithstanding apparent legislative drafting error). Applying the rules of statutory construction, courts must begin with the language of the statute. Where a statute is subject to a plain meaning, the court need not engage in the imprecise exercise of rewriting rules that Congress has affirmatively enacted. *Id.* at 538, 124 S.Ct. 1023. The Supreme Court observed:

> Our unwillingness to soften the import of Congress' chosen words even if we believe the words to lead to a harsh outcome is longstanding. It results from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)(citing *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)).

\* \* \*

■ If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. "It is beyond our province to rescue Congress from its drafting errors, and to provide for what we think ... is the preferred result." *United States v. Granderson,* 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994)(concurring opinion). This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us. *Lamie,* 540 U.S. at 538–42, 124 S.Ct. 1023. " '[T]he sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce [the statute] according to its terms.' " *Id.* at 534, 124 S.Ct. 1023 (*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).

■ The disposition required by the plain meaning of § 522(f)(2) is neither absurd nor demonstrably at odds with the intention of the drafters. In fact, it is consistent with the very strong policy favoring the liberal interpretation of exemption statutes in favor of the debtor to facilitate the fresh start. *See In re Arrol,* 170 F.3d 934, 937 (9th Cir.1999). In enacting the Bankruptcy Reform Act of 1994, the legislature adopted the dissenting opinion in *In re Simonson,* 758 F.2d 103 (3rd Cir.1985). H.R REP. No. 103–835, at 53–54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3362–63. The *Simonson* dissent acknowledges that the overriding purpose of § 522(f) is to protect the debtor's homestead exemption. *Simonson,* 758 F.2d at 110. Indeed, reading the "debtor's interest in the property" to require that all liens be deducted from the value of only the debtor's partial interest is consistent with California law on enforcement of judgments. In the case of joint encumbrances, each co-owner's interest is subject to sale to satisfy the entire debt. *Schoenfeld v. Norberg,* 11 Cal.App.3d 755, 766, 90 Cal.Rptr. 47 (1970). Moreover, courts are to attribute to the words of a statute " 'their ordinary, contemporary, common meaning.' " *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)(*quoting Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct.

311, 62 L.Ed.2d 199 (1979)). The common reading of the "debtor's interest in the property" suggests something more limited than the entire property when the debtor jointly owns the property.

■ Application of the formula in § 522(f)(2)(A) requires that the liens be subtracted in order of reverse priority and that those that are avoided not be included in the calculation. *In re Hanger,* 217 B.R. 592, 595 (9th Cir. BAP 1997). Applying the plain meaning of § 522(f)(2)(A) first to the Montes judicial lien, the sum of the lien, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property is $390,997.

| | |
|---|---:|
| Wells Fargo deed of trust | $148,392 |
| Wilshire Credit deed of trust | 6,975 |
| Chicago Title abstract of judgment | 35,694 |
| Montes abstract of judgment | 54,412 |
| Bad Boys Bail Bonds deed of trust | 21,635 |
| Alexander abstract of judgment | 48,889 |
| Homestead exemption | 75,000 |
| Sum of liens and exemption | $390,997 |

The sum of $390,997 exceeds the value of the debtor's interest in the absence of liens, $187,500, by $203,497, which is the extent of the impairment. Because the extent of the impairment exceeds the amount of the Montes judicial lien, the lien is avoided in its entirety.

Repeating this analysis for the Chicago Title judicial lien, the sum of the Chicago Title judicial lien, all other liens on the property except the Montes judicial lien that has been avoided, and the amount of the exemption that the debtor could claim if there were no liens on the property is $336,585.

| | |
|---|---:|
| Wells Fargo deed of trust | $148,392 |
| Wilshire Credit deed of trust | 6,975 |
| Chicago Title abstract of judgment | 35,694 |
| Bad Boys Bail Bonds deed of trust | 21,635 |
| Alexander abstract of judgment | 48,889 |
| Homestead exemption | 75,000 |
| Sum of liens and exemption | $336,585 |

The sum of $336,585 exceeds the value of the debtor's interest by $149,085, which is the extent that the Chicago Title judicial lien impairs the debtor's exemption. Because the extent of the impairment exceeds the amount of the Chicago Title judicial lien, the lien is avoided in its entirety.

### Conclusion

For the reasons stated herein, the judicial liens of Chicago Title and Montes are avoided in their entirety. The parties are instructed to meet and confer concerning the valuation of the property and the manner in which title to the property is held. If there are any remaining disputed factual issues that require court determination, a telephonic case management conference will be held on December 6, 2005 at 10:30 a.m. to discuss scheduling. The parties are to file case management conference statements no later than December 2, 2005 to advise the court of the status. In the event that there are no disputed issues that require court determination, the debtor is directed to prepare, circulate to counsel for the objecting parties, and submit a form of order consistent with this ruling.